[No. 2480. Decided March 23, 1897.]

JOHN P. JOHNSON, *Respondent*, v. CHARLES IRWIN *et al.*, *Defendants*, MARSHALL K. SNELL *et al.*, *Appellants*.

MORTGAGES — OPTION TO DECLARE DUE FOR NON-PAYMENT OF TAXES — FORECLOSURE — PARAMOUNT TITLE — TRIAL OF ISSUE — ATTACHMENT — LIS PENDENS — CONSTRUCTIVE NOTICE.

The mortgagee may elect to treat the mortgage as due prior to its maturity, when it provides that "if said sum . . . is not paid when the same is due, and if the taxes and assessments . . . are not paid, . . . then said party of the second part shall be entitled to the possession of said premises," the mere fact of such

conditions being joined conjunctively not requiring a concurrence of maturity and non-payment of taxes before the mortgagee would be entitled to foreclosure.

Where a complaint in an action to foreclose a mortgage tenders issue upon the priority of respective liens and issue is joined therein by a defendant claiming paramount title, he cannot after trial raise the objection that the action should have been dismissed as to him on the ground that he asserted paramount title.

In a suit for foreclosure of a mortgage plaintiff is entitled to the trial of an issue raised as to whether the title to the premises asserted by a defendant other than the mortgagor was acquired prior or subsequent to the execution of the mortgage.

The filing of a writ of attachment in the county auditor's office is not constructive notice to one who subsequently acquires rights under a grantee of the attachment debtor.

The provisions of Laws 1893, p. 412, § 17, which declare that every person whose conveyance or incumbrance is executed or recorded subsequent to the filing of the notice of lis pendens shall be deemed a subsequent purchaser or incumbrancer and shall be bound by all proceedings taken after the filing of the notice, applys only to persons whose conveyance or incumbrance is taken from the parties to the suit and not from strangers to the record.

Appeal from Superior Court, Pierce County.—Hon. EMMETT N. PARKER, Judge. Affirmed.

*Marshall K. Snell, Doolittle & Fogg,* and *E. W. Taylor* (*T. L. Stiles,* of counsel), for appellants:

Upon the trial the plaintiff produced his note and mortgage and put them in evidence, without any statement or proof whatever by any witness concerning them or the alleged debt. Conceding that plaintiff was a *bona fide* mortgagee, he, being in fact a subsequent mortgagee, could have a lien, as against appellants, for only the amount actually paid by him for his mortgage. *Withers v. Little,* 56 Cal. 370; *Shotwell v. Harrison,* 22 Mich. 409. The lien of an attachment is binding upon subsequent purchaser and incumbrancers after a copy of the writ has been filed

with the county auditor (Code Proc., § 300). Since
1893 we have had a statute which supplements the
attachment law and broadens the constructive notice
given by the record with the auditor where real prop-
erty is levied upon. (Lis pendens act, Laws 1893, p.
412, § 17.) We contend that the purpose of this law
was to require purchasers of real property to look for
attachments, not only against their immediate grant-
ors, but against prior grantors as well. Unless this
was its purpose, there is no purpose which it sub-
serves, because the attachment law alone gives notice
to subsequent grantees of the defendants named in
the action. A very strong and pertinent case on this
subject is *Arper v. Baze*, 9 Minn. 108; see also, *Thomp-
son v. Baker*, 141 U. S. 648, and cases cited therein.

*B. F. Heuston*, for respondent:

The court had jurisdiction of the parties and of the
subject matter, and, at least until appellants made
some move to withdraw their demand for relief, it
was certainly not only the right but the duty of the
court to try and decide the questions upon which ap-
pellants' right to relief depend. But, even if it is
conceded that this is an ordinary foreclosure suit, and
that the defendants claim a paramount legal title, the
proposition that they can submit their rights without
objection, and, after getting beat, withdraw their claim
from this suit and begin another on the same ground,
is shocking to any one's sense of justice. All the later
cases not only hold with us, but show consideration
and reasoning not capable of being resisted. *Helck v.
Reinheimer*, 105 N. Y. 470; *Jordan v. VanEpps*, 85 N.
Y. 435; *Barnard v. Onderdonk*, 98 N. Y. 158; *Louns-
bury v. Catron*, 8 Neb. 469; *Shellenbarger v. Biser*, 5
Neb. 198; *Cromwell v. MacLean*, 123 N. Y. 474; *Con-*

verse v. *Michigan Dairy Co.*, 45 Fed. 18; *Bolling v. Pace*, 99 Ala. 607.

This case resolves itself into the single question of *res judicata*. The respondent was not a party to the attachment suits; nor was his grantor, Irwin, at the time of making the mortgage. If Irwin had not subsequently intervened, there would not be even the shadow of a ground for the claim that the rights of either Irwin or the respondent were adjudicated in those suits; and certainly this respondent cannot be estopped by Irwin's acts subsequent to making the mortgage, whereby he virtually parted with all his financial interest in the property. The following authorities show that only a party (or a grantee under one who was a party at the time of the grant) is estopped : *Travis v. Topeka Supply Co.*, 42 Kan. 625; *Frank v. Jenkins*, 11 Wash. 611; *Pacific Mfg. Co. v. Brown*, 8 Wash. 347; *Sharp v. Lumley*, 34 Cal. 615; *Jackson v. Warren*, 32 Ill. 340; *McKinney v. Farmer's National Bank*, 104 Ill. 183; *Satterfield v. Malone*, 35 Fed. 445; *Irving v. Cunningham*, 77 Cal. 52; *Quarl v. Abbett*, 102 Ind. 233 (52 Am. Rep. 662).

It is an interesting question whether an attachment suit against a fraudulent grantor alone, subsequent to the making and recording of the fraudulent deed, charges a purchaser from the fraudulent grantee with notice of the creditor's claim of fraud. The better reasoning and weight of authority are that it does not. *Travis v. Topeka Supply Co.*, 42 Kan. 625; *Satterfield v. Malone*, 35 Fed. 445; *Morrow v. Graves*, 77 Cal. 218.

The opinion of the court was delivered by

DUNBAR, J.—On the 12th day of November, 1894, six actions at law were commenced in the superior court of Pierce county by the appellants against one

Erasmus Bennett *et al.* to recover different amounts aggregating $20,970.35. On the same day a writ of attachment was issued in each of said actions on the ground of non-residence of the defendants, and the same were, on the following day, November 13, 1894, levied upon the same property described in the mortgage sought to be foreclosed in the case at bar, as property of Erasmus Bennett. Upon the same day, the sheriff gave notice of his said levy and filed said notice and attachment with the auditor of Pierce county, and the several plaintiffs each filed with the auditor of Pierce county his notice of the pendency of the action, containing the names of the parties to the action, a description of the property affected thereby, and of the cause of action and the demands therein. These actions were prosecuted to judgment some time in March, 1895. On the 9th day of January, 1895, Charles Irwin and Louise H. Irwin, his wife (who were the mortgagors of the plaintiff herein), appeared in each of said actions by intervention and set up by way of answer and cross-complaint that they were the owners of said attached premises by deed of conveyance from Erasmus Bennett to them, of date September 1, 1893, and that said attachment constituted a cloud upon their title to said premises, which they prayed to have removed. Upon this intervention issues were made up, contesting the good faith of the Irwins' title, and upon the trial it was in each of said causes adjudged and decreed by the court that the said deed of Erasmus Bennett to said Irwin was fraudulent and void, having been executed without consideration, and for the purpose of hindering, delaying and defrauding the creditors of said Erasmus Bennett, and the same was decreed to be vacated, canceled and held for naught, and said mortgaged premises were

held to be the property of Erasmus Bennett, and the lien of said writs of attachment was adjudged to be a first lien upon said premises and superior to any claim of the intervenors, Irwin, or any one claiming under them.   Execution was issued upon this judgment and the property was sold to Marshall K. Snell and Charles B. France, for themselves and the other appellants in the actions above mentioned, which sale was in due course confirmed by the court.   Certificate of purchase issued, and the purchasers have ever since that date been in possession of the premises.   On the first day of January, 1895, Irwin and wife and E. R. Bennett executed to the respondent Johnson their promissory note in the sum of $10,368, and gave a mortgage upon the same lands, which were sold under execution, to secure the same.   The mortgage was recorded in the office of the auditor of Pierce county, January 21, 1895.   Upon default in some of the conditions prescribed in the mortgage, Johnson commenced his action to foreclose the same on October 25, 1895 — which is the suit now under consideration.

The complaint set up the execution of the note and mortgage, the non-performance of conditions imposed, with the allegation that the defendants, the appellants herein, claimed an interest in the lands sought to be subjected, by virtue of the execution sale under certain judgments obtained by them since the making and recording of plaintiff's mortgage, but on obligations existing prior thereto, and which judgments, the complaint alleged, the defendants claimed to be a lien upon the property described in the mortgage.   The appellants denied the main allegations of the complaint for want of information or belief, and as an affirmative defense pleaded the proceedings in the suits above mentioned.   A reply was interposed to

42—16 WASH.

the affirmative allegations in the answer, and upon these issues the case proceeded to trial and a judgment was rendered by the court sustaining the complaint of the respondent and decreeing that said plaintiff John P. Johnson had a first mortgage lien upon the premises described. From this judgment the appeal is taken.

The first contention of the appellant is that the complaint did not state facts sufficient to constitute a cause of action, the suit having been brought before the mortgage became regularly due. The allegation is:

"That it was provided in and by said mortgage that if the taxes which were then or might thereafter be assessed and levied against the mortgaged premises, or any part thereof, were not paid when the same were by law due and payable, then the whole of the sum and sums mentioned in said mortgage with interest thereon should become due and payable and the plaintiff should be entitled to the possession of said premises.

"That the defendants and each and all of them have failed to comply with the terms and conditions of said mortgage in that the taxes on said premises for the years 1893 and 1894 levied and assessed by the county of Pierce for state, county and municipal purposes and amounting to more than $100 for each of said years have by law long since become due and payable and no part of such taxes have been paid by defendants or at all."

Then follows what is really a conclusion of law:

"That the sums secured by said mortgage has thereby become due and payable and plaintiff is now entitled to and does hereby consider and treat said principal sum as due and payable and brings this suit to collect the same by foreclosure and sale in the manner provided by law."

We think a reasonable construction of this provision

entitles the respondent to treat the note and mortgage
as matured.    The appellant, referring to the clause in
the mortgage which is to the effect:

"But if said sum   .  .  .   is not paid when the
same is due, and if the taxes and assessments  .  .  .
are not paid,  .  .  .   then said party of the second
part shall be entitled to the possession of said prem-
ises,"

insists that these are conjuctive provisions and that
both of the events must concur before there is any
right in the mortgagee to move in any way.    Such a
construction as this would destroy the effect of the
provision in relation to the taxes altogether, for the
mortgage would become due in any event upon its
maturity, and upon such maturity the respondent
would have the remedy of foreclosure under the law,
whether stipulated in the contract or not.    We also
think that the mortgage was sufficiently acknowledged
to entitle it to record.

The next contention of the appellant is that under
the ruling of this court in the case of *California Safe
Deposit and Trust Co. v. Cheney Electric Light, etc., Co.,*
12 Wash. 138 (40 Pac. 732), appellants having pleaded
an adverse title which they claimed superior to that
of the plaintiff's mortgagor, such title could not be
litigated in the foreclosure proceeding, and that it
was the duty of the court to dismiss appellants from
the case.    We do not think this case falls within the
rule announced in the case above cited.    The com-
plaint here seeks to try the priority of these respective
liens, sets out the nature of the liens and asks that
plaintiff's lien be established and quieted; and even if
technically objectionable, in a case where the objec-
tions were seasonably raised, the issue tendered by
the answers in this case raise the question of priori-

ties, and the objection raised by the appellant here
was not raised until after the trial of the case below.
It is insisted by the appellant that this matter was
called to the attention of the court by objection to the
testimony in an early stage of the proceedings. "This
course," says the appellant in his brief, "was pressed
upon the court from the beginning of the case, and
was first brought to its attention by appellants' objec-
tions to the reception of plaintiff's note, mortgage and
*lis pendens* (St. p. 4). The objections made were that
these papers were immaterial and irrelevant, as they
were as against appellants, the first question to be de-
termined in the case being whether appellants' title
was or was not 'adverse.'" A reference to the state-
ment cited, namely, p. 4 of the Statement of Facts,
shows, however, that upon the introduction of the
mortgage by the attorney for the respondent the ob-
jection was, "We object to the introduction of them
as immaterial and irrelevant." The grounds of the
alleged immateriality or irrelevancy were not made
known. The further objection raised on the same
page was based on altogether different ground, and no
objection whatever was raised to the trying of these
issues until after the announcement of the findings of
fact and conclusions of law when appellants proposed
their third request which was as follows:

"That as to the claims of the defendants, Snell,
Keyes, Ames and the State National Bank of St. Jo-
seph, mentioned and set forth in the respective answers
herein touching said property, this court, in this cause,
takes no jurisdiction nor makes no order or decree;
save and except that it orders and decrees that the
last above named defendants, and each of them, go
hence without day and recover their costs of the plain-
tiff."

But as we have before stated, the cause was tried on

the theory of ascertaining the priorities, and the answer directly put in issue this question. Paragraph seven of the answer is as follows:

"As to the allegation contained in the seventh paragraph of said complaint, defendants admit that they have a right, title and interest in and to said premises, by virtue of attachments, judgment and decree of court, execution and sale as hereinafter in their affirmative answer and defense is fully set forth, and defendants allege that such right, title, claim, interest and lien is prior and paramount to plaintiff's alleged mortgage; and deny that it is subsequent, subject, or inferior to plaintiff's said mortgage."

And the prayer of the answer is as follows:

"That plaintiff's action may be dismissed and that they have and recover their costs and disbursements;

"That plaintiff may be declared to have no lien upon said premises;

"That the title of said land and premises may be vested and quieted in the answering defendants, Marshall K. Snell and the State National Bank of St. Joseph, Missouri;

"And that they have such other and further judgment, order and relief as may be just and equitable."

Having tendered these issues and tried them out, it would not be just or equitable to allow the appellants to raise this technical objection at this time. But even conceding that the objection had been seasonably made, the action was properly tried under the rule announced by this court in the *Pennsylvania Mortgage Investment Co. v. Gilbert*, 13 Wash. 684, (43 Pac. 941), where it was held that in a suit for foreclosure of a mortgage, plaintiff was entitled to the trial of an issue raised as to whether the title to the premises asserted by defendant other than the mortgagor was acquired prior or subsequent to the execution of the mortgage,

and this is exactly what was tried in this case. The whole case depends upon the determination of the fact. whether the title to the premises asserted by the appellants was acquired prior or subsequent to the execution of respondent's mortgage; and this brings us to the discussion of that question.

It is conceded that respondent's mortgage was obtained after the filing of the writ of attachment and of the *lis pendens* in the auditor's office in Pierce county. But those actions were actions against Bennett and Company, and while it is true that Irwin and wife, respondent's mortgagors, intervened in those actions and became parties thereto, this intervention was subsequent to the filing of the writs of attachment. and of the *lis pendens* and subsequent to the execution of the mortgage to the respondent, so that respondent's rights are in no way affected by the appearance of his mortgagors in the suits against. Bennett and Company. The question, then, is: did the filing of the writ of attachment and *lis pendens*, or either of them, constitute constructive notice to the respondent? We held in *Clerf v. Montgomery*, 15. Wash. 483 (46 Pac. 1028), that where a debtor conveyed land to his wife in fraud of his creditors, and afterwards a creditor sued the husband, and the sheriff levied on the interest of the husband in the land by filing a copy of the writ and notice of attachment in the county auditor's office, a subsequent purchaser from the wife for value without actual notice of the levy was a *bona fide* purchaser without notice of any incumbrance. We are satisfied with this holding, and it settles the proposition in this case so far as the effect of the filing of the writ of attachment is concerned, but it is contended by the appellant that a. distinction can be drawn between the effect of the writ.

of attachment and the *lis pendens* provided for in the laws of 1893. The language of § 17, page 412 of the laws of 1893, is exceedingly broad, and after providing for the filing of the *lis pendens*, announces that every person whose conveyance or incumbrance is subsequently executed or subsequently recorded shall be deemed a subsequent purchaser or incumbrancer and shall be bound by all proceedings taken after the filing of such notice to the same extent as if he were a party to the action. A literal construction of this law would of course sustain the appellants' contention, but we think it must be construed to apply to persons whose conveyance or incumbrance is taken from the parties to the suit, and not from strangers to the record. The object of the registry laws is to enable a person to determine the condition of lands with reference to conveyances or liens, and a literal construction of this statute, instead of furnishing information which could be safely relied upon by the purchaser or incumbrancer, would constitute a trap for the investigator. Under our system of recording, it is the grantors and grantees of land, and not the description of particular pieces of land, that can be followed by a searcher of the records. In this case it would become the duty of the respondent in purchasing this land to investigate the title so far as the mortgagor Irwin was concerned up to the time that the mortgage was executed, and see that no judgments were of record against his mortgagor at that time which would become a lien upon his real estate, no writs or liens of any kind. It would then further become his duty to investigate the title in his mortgagor's grantor, Bennett, back to the time when such grantor was divested of his title by the execution of his deed to Irwin. And if there were no liens upon

the land at that time, and no judgments against Bennett which would constitute a lien against his real estate, surely he might then be dropped from further consideration, and it would not become the duty of the purchaser to further investigate Bennett's legal responsibility or transactions. In other words, he would not be interested in any suits which might be brought against him after the title had passed from him by deed. The title, then, having been uncontradicted in Bennett at the time of the transfer of the execution of the deed by him to Irwin, and there being no judgments against Irwin which would constitute a lien on his real estate at the time that the mortgage was executed from Irwin to the respondent, and Irwin not having been a party to the actions in which the *lis pendens* were filed until after the mortgage was executed to the respondent, and respondent not having been made a party to the actions against Bennett, we think that the court rightfully concluded that the respondent was not bound in any way by the actions brought by these appellants against Bennett or by the writ of attachment or *lis pendens* which was filed in that case.

It is next contended by the appellant that the respondent had actual notice of the pendency of the actions against Bennett, and the contention that the transfer from Bennett to Irwin was fraudulent and that he was therefore bound, even conceding that there was no constructive notice given. We have carefully examined the testimony on this point, but we scarcely think there is sufficient to warrant the conclusion that the respondent had actual notice of the scope of the suits against Bennett. Mr. Snell testifies that when he saw Johnson, the respondent, in February, and told him of these suits, Johnson said

he knew of them the November before.   It does not follow from this that he knew of the attachments or the filing of the *lis pendens* which described this particular property.   He may have known that these appellants had sued Bennett for a debt due, and that is the extent to which his admissions go, so far as the testimony of Mr. Snell is concerned.

The other objections raised by the appellants in regard to the proof of the amount due we think are not well sustained by the record, outside of the fact that the finding of fact in that respect was not excepted to.

The judgment will be affirmed.

SCOTT, C. J., and ANDERS, REAVIS and GORDON, JJ., concur.