[No. 3960.    Decided June 10, 1901.]

THE STATE OF WASHINGTON *on the Relation of Fremont Campbell,* v. SUPERIOR COURT OF PIERCE COUNTY, HON. W. H. SNELL, *Judge thereof.*

HOMICIDE — DEATH WARRANT — EFFECT OF AMENDMENT OF STATUTE.
    Mandamus will lie to compel a superior court to issue a death warrant in accordance with existing law, although before such death warrant can be carried into execution, the existing law will have been superseded by a later enactment which will go into

effect in the period intervening between the application for the death warrant and the date fixed for the execution.    (Fullerton, J., dissents).

STATUTES — CONSTRUCTION PRIOR TO TAKING EFFECT.

The courts will not pass upon the operation and effect of legislative enactments prior to their going into effect.    (Hadley and White, JJ., dissent).

*Original Application for Mandamus.*

*Fremont Campbell,* Prosecuting Attorney, and *Charles O. Bates,* for relator.

The opinion of the court was delivered by

REAVIS, C. J.—Original application for mandamus. The state, on the relation of Mr. Campbell, prosecuting attorney of Pierce county, moves for a mandate requiring the judge of the superior court to fix a day upon which judgment and sentence of death, theretofore rendered in the case of State of Washington, plaintiff, v. Eben L. Boyce, defendant, shall be executed, and that the superior court issue a death warrant directed to the sheriff of Pierce county, commanding him to execute the judgment and sentence on a day to be fixed by the court therein.    It is stated that the superior court refused to fix a day, or any day, for the execution of such judgment and sentence, or to issue a death warrant, solely upon the ground that any day which might be fixed not less than thirty nor more than ninety days from the 6th day of June, would be after the act of the legislature entitled "An act relating to the death warrant, the contents thereof, the return of same, and fixing place of execution, and amending sections 6993 and 6995 of Ballinger's Annotated Codes and Statutes of Washington," approved March 8, 1901 (Laws 1901, p. 100), had taken effect and become a law, and that such law repealed §§ 6993 and 6995, Bal. Code, under which the judgment and sentence must be carried into execution.

To the petition for mandate a general demurrer was interposed by the judge of the superior court, and it was stipulated by relator and respondent that the petition be heard upon its merits.

From the record presented it appears that Eben L. Boyce was duly convicted of the crime of murder in the first degree, and judgment on such conviction entered, and sentence of death in pursuance thereof was made on the 26th day of April, 1900; that thereafter, upon appeal from such judgment to this court, it was, on the 19th day of April, 1901, duly affirmed, and the sentence ordered carried into execution, and the remittitur duly filed in said superior court. The question for consideration is the duty of the superior court to direct the execution of the sentence of death. The existing law applicable to the case is contained in §§ 6993-6996, Bal. Code. Section 6993 substantially declares that when judgment of death is rendered, the warrant shall be signed by the judge and attested by the clerk, and state the conviction and judgment, and appoint a day for the execution, which shall not be less than thirty nor more than ninety days from the time of judgment, and the sheriff or officer to whom a warrant is delivered shall return the same within twenty days after the time fixed for the execution. Section 6994 prescribes the punishment as death by hanging by the neck. Section 6996 provides that when the time appointed for the execution of a prisoner is past, from any cause, the court shall cause the prisoner to be brought immediately before it, and proceed to appoint a day for the carrying into effect of the sentence of death. This law and the provisions for carrying out of the sentence of death were in force at the time the crime for which defendant was convicted was committed, and are now the law; but the respondent declines to issue the death warrant under the existing law

18—25 WASH.

for the reason that the act relating to the death warrant, *supra,* will go into effect before the minimum·time for the execution required in the death warrant shall have expired; and counsel for the relator urge the court to construe the future act relating to the death warrant, to determine its effect upon the existing law and its relation to crimes committed before it is in force; and the construction and effect of the intended law have been exhaustively discussed. The probable effect and consequences to the state, society, and the defendant are earnestly impressed upon the court as requiring determination at this time of the force and effect of the contemplated law, which changes the procedure in the execution of the death sentence. However cogent such reasons may be to induce the court to advance the hearing of a cause and to a speedy consideration and decision thereof, no judicial determination can be made until the case is completely before the court for hearing. It is apparent that the act of March, 1901, *supra,* is not the law now before us. Its operation must commence in the future, subject to the contingency of time, subject always to the legislative will. The judicial function is to construe and declare existing law. In those rare cases where, under extraordinary emergencies, judges have expressed opinions in cases not properly before them, such opinions have always been deemed merely advisory, and have not had the force and effect of binding decisions, and especially is this true where constitutional principles are involved; and sound jurists have always been as one in criticizing and animadverting on the impropriety of such opinions. In the case of *Clayton v. Calhoun,* 76 Ga. 270, injunctive relief was asked against the enforcement of a proposed law. The court, in affirming the decree of the inferior court, observed:

"It may be well, however, to add, in approval not only

of the judgment of the chancellor who denied the writ of injunction, but of the main reason on which he rested his judgment, that it would be a stretch of power in the judiciary to restrain by its process, *mesne* or final, a law enacted by the general assembly, in a formative state and stage. . . . Such stretch of judicial authority would overshadow the law-making prerogative, usurp. the functions of a co-ordinate and distinct department of government by interfering with its mode. of enacting laws, and violate that paragraph of the bill of rights in the constitution, which declares that 'the legislative, judicial and executive powers shall forever remain separate and distinct.' "

It was also observer by the court in another case (*Scoville v. Calhoun*), at page 269 of the same volume:

"When the law operates upon the private property of an individual, and that is seized or destroyed or confiscated, or the individual is arrested and indicted thereunder for its violation, then that portion of the law thus affecting his private property and personal liberty may be assailed by him as unconstitutional or illegal. . . . They [the courts] will always wait until the law is attempted to be put in operation, and then act against the officer who executes or attempts to execute it, and not against the law-making branch of the government in the general scope of its power."

In the case of *Kansas City, etc., R. R. Co., v. Whitehead,* 109 Ala. 495 (19 South. 705), the court, in the construction of a section of the Alabama code, observed:

"It is true this section was pronounced unconstitutional in a very brief opinion in the case of *Brown v. Alabama Great Southern R. Co.,* 87 Ala. 370. But at the time of the injury the subject of the suit in that case, and at the time of the commencement of the suit, this section of the Code had not legal existence. The Code had not then become operative, as was pointed out in the argument of counsel. Statutes cannot be pronounced unconstitutional at the mere will of courts, or in suits in which they are not involved—not the foundation of any right asserted by

the plaintiff, or matter of defense preferred by the defendant."

And the decision referred to was not deemed authority in the construction of the law which was then in operation.

The principle was under consideration by the supreme court of Ohio in *State v. Baughman,* 38 Ohio St. 455. There, by joint resolution of the general assembly, the attorney general was directed to institute action in *quo warranto* against certain police commissioners, and to procure therein a decision of the supreme court on several constitutional questions suggested in the resolution. The court observed in the case before it:

"A decision on any of the questions not suggested, not necessary to a determination of the right of defendants to exercise these functions, would not be a judicial settlement of such questions, but would be without authority conferred by the constitution to make it. To be a judicial settlement the question decided must arise in a judicial proceeding, properly before a court of competent jurisdiction. . . . If the judiciary were to assume to decide hypothetical questions of law not involved in a judicial proceeding in a cause before it, even though the decision 'would be of great value to the general assembly' in the discharge of its duties, it would, nevertheless, be an unwarranted interference with the functions of the legislative department that would be unauthorized, and dangerous in its tendency. Not only this, but it would be an attempt to settle questions of law involving the rights of persons without parties before it, or a case to be decided in due course of law, thus violating that provision of the Bill of Rights which declares that every person shall have a remedy for an injury done him by due course of law."

It becomes important to inquire who are the real parties in interest here. True, the relator is one. Who is the other? Ordinarily, in the procedure of mandamus and prohibition against the judge of a superior court, the real party in interest is not the court. The judge has no rights

affected, and the rule here has been to assess the costs of such procedure to the real party, other than the judge. A grave question is suggested to the court, involving the rights and the life of a defendant convicted of murder. He is not here, not a party before the court. We must look at the substance. It only requires the suggestion that he is interested in the final determination to conclude that he may be heard. Evidently his rights cannot be foreclosed by any expression in any form where he is not a party.

The conclusion is that a case is not presented which involves an inquiry into the effect and operation of the contemplated law, which may go into effect hereafter. But, under the requirements of the existing law, it is the duty of the superior court to issue the death warrant in accordance with the provisions of the statute, and it is so ordered. The writ will issue.

DUNBAR, ANDERS and MOUNT, JJ., concur.

HADLEY, J., (concurring).—I agree with the majority of the court that the writ asked. must issue, because the existing law demands it. But I believe this court should in this case declare the effect of the act of 1901. It is true that act is not yet in force, but the record in this case shows that it will be in force before the warrant of the lower court can be executed. Nothing but an extraordinary session of the legislature and a repeal of the act of 1901, or a modification thereof, can prevent this, and no presumption can be indulged that such an event may happen. The record shows that the lower court refused to issue the warrant on the ground that the act of 1901 will be in force before the warrant can be executed, and he construes that act as taking away the authority of the sheriff to carry the warrant into execution. In view of the gravity of the situation, involving as it does the judicial execution of a prisoner, I believe the court should now construe the

effect of the act of 1901, for the guidance of the sheriff, whose duty it is made, under existing law, to execute the very warrant which it is now ordered shall issue.

WHITE, J., concurs with HADLEY, J.

FULLERTON, J., (dissenting).—I agree with the majority opinion in so far as it decides that the act of 1901 is not before the court, but I do not think that the order directing the trial judge to issue the death warrant should be imperative. It was made to appear before that court, and consequently appears here, that the act of 1901 will be in force before any warrant that may be issued can be carried into execution by the sheriff. The trial court, therefore, when the application was made to it, should have continued the hearing until such time as the question of the power of the sheriff to carry into execution a death warrant could have been lawfully determined; and, this being the duty of the trial court, this court should deny the writ asked for, but should do so with leave on the part of the prosecuting attorney to renew the application when the act of 1901 goes into effect.