[No. 12202.  Department One.  February 11, 1915.]

CARSTENS & EARLES, INCORPORATED, *Respondent*, v. THE CITY OF SEATTLE *et al, Appellants.*[1]

APPEAL—RIGHT TO APPEAL—INTEREST—ABSTRACT QUESTIONS.  In an action to foreclose a mortgage, in which the defendant city's lien for an assessment was held superior, the city has no right to appeal from a decree holding that another assessment lien, held by a third person, in which the city was not interested, was inferior to the mortgage lien, on the theory that it was interested in the abstract question of law involved therein.

APPEAL—PROCEEDINGS—ABANDONMENT—SECOND APPEAL.  The failure to perfect an appeal, or the abandonment thereof by a party having the right to appeal, does not prevent the party from taking and perfecting a new appeal within the time allowed by law.

APPEAL—PROCEEDINGS—TIME FOR APPEAL—BY COPARTIES — INEFFECTUAL APPEAL.  A party having no right to appeal, cannot, by an attempted appeal, curtail or limit the ninety days allowed by law for an appeal to a coparty, interested in the real controversy and having a right to appeal; Rem. & Bal. Code, § 1720, requiring coparties to join in an appeal taken, or give notice of independent appeal within twenty days after an appeal taken, not applying in such a case.

[1] Reported in 146 Pac. 381.

MUNICIPAL CORPORATIONS—LOCAL IMPROVEMENTS—ASSESSMENTS—
TAXATION—LIEN—PRIORITY.  A local assessment to pay for lands
condemned for a municipal improvement is levied in the exercise
of the sovereign power of taxation, and may be made superior to
all other liens regardless of time.

SAME—ASSESSMENTS—LIENS—PRIORITY—STATUTES.  Rem. & Bal.
Code, §§ 7787-7813, providing for local assessments to pay for the
cost of condemnation proceedings for municipal improvements, upon
published notice, and to be enforced by summary sale of the prop-
erty, makes the lien for local assessments superior to prior mort-
gage or contract liens on the property, although the law contains no
express terms so providing; the intent being to subject the prop-
erty to the lien by a proceeding *in rem*, regardless of its ownership
and of all prior contract liens.

SAME.  Such rule is not affected by the fact that the general
revenue laws and other local assessment statutes *in pari materia*
provide in terms that all mortgage and other private liens shall be
superior to the lien of the general or local assessment liens pro-
vided for; since the legislative intent is clear to make the assess-
ment lien superior.

Appeal from a judgment of the superior court for King
county, Ronald, J., entered June 20, 1914, upon findings in
favor of the plaintiff, in an action to foreclose a mortgage,
tried to the court.  Reversed as to one defendant.

*James E. Bradford, William B. Allison, C. B. White,* and
*John T. Casey,* for appellants.

*Preston & Thorgrimson* and *R. H. Coshun,* for respond-
ent.

PARKER, J.—The plaintiff commenced this action in the
superior court for King county, to foreclose a mortgage on
land in the city of Seattle, executed by the defendants to
John G. Smith and wife.  The city of Seattle was made a
defendant because it claimed a local assessment lien upon
the land.  J. B. Coughlin was made a defendant because he
claimed to be the owner of another local assessment lien by
purchase of a delinquent certificate therefor from the city of
Seattle.  The trial resulted in a decree of foreclosure, decree-
ing the lien of the plaintiff's mortgage to be superior to the

assessment lien claimed by the defendant Coughlin, but inferior to the assessment lien claimed by the city, and sale of the land was ordered in satisfaction of the plaintiff's mortgage lien, subject only to the assessment lien of the city. The city of Seattle and J. B. Coughlin are prosecuting separate appeals from this disposition of the cause.

The facts necessary for us to notice are not in dispute and may be briefly stated as follows: The mortgage here involved was duly executed on December 29, 1908. The assessment lien of the city is for the cost of the construction of a local sewer improvement. The superiority of this lien over respondent's mortgage was conceded and decreed accordingly, upon the trial, so, of course, the city was successful and had no occasion to appeal so far as the claim of superiority of that lien is concerned. On August 17, 1912, there was duly rendered by the superior court for King county a judgment confirming a local assessment levied upon the land for the sum of $1,727, in eminent domain and local assessment proceedings prosecuted by the city of Seattle for the widening of 18th street, in pursuance of the statute relating to the power of eminent domain by cities and the charging by local assessment of the awards and costs thereof against property benefited thereby. Rem. & Bal. Code, § 7767, and following.

Thereafter, on January 3, 1913, appellant Coughlin became the owner of the lien of this assessment upon the land, by purchase of a delinquent certificate therefor from the city at a sale duly had in pursuance of § 7802, Rem. & Bal. Code, relating to the enforcement of the lien of such assessments. The regularity and validity of these eminent domain and assessment proceedings, and of the sale by which appellant Coughlin became the owner of the lien of the assessment, is not questioned here. Thereafter, on February 11, 1914, this action was commenced by respondent, seeking foreclosure of its mortgage lien. The decree of foreclosure was rendered on June 20, 1914. Thereafter, on July 16, 1914, counsel for the city caused to be served and filed its notice of appeal

from the decree to this court. On July 17, 1914, counsel for defendant J. B. Coughlin caused to be served and filed his notice of appeal from the decree to this court. Counsel for defendant Coughlin, however, did not perfect this appeal by filing an appeal bond within the time prescribed by law. Thereafter, on September 10, 1914, counsel for defendant Coughlin caused to be served and filed a new notice of appeal, which was followed by due execution and filing of an appeal bond on the same day. This, it will be noticed, occurred within ninety days following the rendering of the decree, but not within ten days following the service and filing of the city's notice of appeal.

Counsel for respondent moved to dismiss the city's appeal upon the ground that the city has no appealable interest in this controversy. Counsel for the city does not claim any further interest in the controversy than an interest in the abstract question of whether a special eminent domain assessment to pay the expense of condemnation, such as this, is in law a lien superior to the lien of a prior mortgage upon the land so assessed. We have noticed that the city's local assessment lien was, upon the trial, conceded and decreed to be superior to respondent's mortgage lien, and that that was the only lien then claimed by the city upon the land. True, it acquired the lien of the special eminent domain assessment in the first instance, but it transferred that lien to appellant Coughlin by sale of a certificate of delinquency therefor long before the commencement of this action to foreclose respondent's mortgage lien. It is not claimed that the city has any interest in this controversy by virtue of any covenant of warranty on its part accompanying its sale of this lien to appellant Coughlin, nor that it would suffer in the least by this court holding with the superior court that respondent's mortgage is superior to that lien, other than that thereby there would be established a principle of law touching the superiority of prior mortgage liens over eminent domain assessment liens contrary to what counsel for the city concede to be the

city's interest, not in this particular case, but speaking generally. To recognize the city's claimed right to be heard here as a party to this controversy would compel us to recognize the right of any one claiming an interest in the establishing of some abstract principle of law to be heard in any cause involving such questions of law. The fact that there was at the beginning of this action in the superior court apparently some controversy between respondent and the city of Seattle as to the superiority of their respective liens, does not change the fact that the question of the superiority of appellant Coughlin's eminent domain assessment lien over respondent's mortgage lien is only a moot question of law so far as the city's rights are here concerned. This precludes the city from further participation as a party to this controversy. There is not, and has not been since the rendering of the decree of foreclosure, any actual controversy between the parties in which the city is interested. *Johnson v. Irwin,* 16 Wash. 652, 48 Pac. 345; *State ex rel. Campbell v. Superior Court,* 25 Wash. 271, 65 Pac. 183; *Oudin & Bergman Fire Clay Min. & Mfg. Co. v. Conlan,* 34 Wash. 216, 75 Pac. 798; *Wilson v. Fraser,* 67 Wash. 347, 121 Pac. 829; *Hillyard v. Board of County Com'rs,* 69 Wash. 423, 125 Pac. 363; 2 Cyc. 533. We conclude that the city's appeal must be dismissed. It is so ordered.

In view of our conclusion upon the merits of the controversy between respondent and appellant Coughlin, the dismissal of the city's appeal is of no consequence to it other than to preclude it from recovering its costs in this court. We have, however, dealt with the question of the city's right of appeal in this case at some length because of the pertinency of that question to the sufficiency of defendant Coughlin's appeal, which we will now notice.

Counsel for respondent moved to dismiss the appeal of defendant Coughlin on the ground that his appeal was not perfected as required by law. Counsel seem to contend that, upon Coughlin's failure to follow his first notice of appeal

with the timely filing of an appeal bond, such failure to per-
fect that appeal exhausted his right of appeal regardless
of the time prescribed by law for appealing. It has become
the settled law of this state that the failure to perfect an
attempted appeal, or the abandonment of an appeal by a
party having the right to appeal, does not in the least impair
such party's right to give notice of and perfect a new in-
dependent appeal, providing only, that such new appeal is
perfected within the time prescribed by law. Rem. & Bal.
Code, § 1735 (P. C. 81 § 1223); *Embree v. McLennan*, 18
Wash. 651, 52 Pac. 241; *Sligh v. Shelton Southwestern R.
Co.*, 20 Wash. 16, 54 Pac. 763; *Griffith v. Maxwell*, 20
Wash. 403, 55 Pac. 571; *Noble v. Whitten*, 34 Wash. 507,
76 Pac. 95; *Tatum v. Geist*, 40 Wash. 575, 82 Pac. 902; *State
v. Miller*, 80 Wash. 487, 141 Pac. 1139.

The principal contention of counsel for respondent upon
their motion to dismiss defendant Coughlin's appeal, is that
his second notice of appeal and bond filed therewith did not
perfect his appeal, although such notice was given and the.
bond filed within the ninety days prescribed for taking an
appeal by Rem. & Bal. Code, § 1718 (P. C. 81 § 1187), be-
cause that appeal was not perfected within ten days following
the city's notice of appeal as required by Rem. & Bal. Code,
§ 1720 (P. C. 81 § 1191), which reads as follows:

"All parties whose interests are similarly affected by any
judgment or order appealed from may join in the notice
of appeal whether it be given at the time when such judgment
or order is rendered or made, or subsequently; and any such
party who has not joined in the notice may at any time within
ten days after the notice is given or served, serve an inde-
pendent notice of like appeal, or join in the appeal already
taken by filing with the clerk of the superior court a statement
that he joins therein or in some part thereof, specifying in
what part. Any such party who does not so join shall not
derive any benefit from the appeal unless from the necessity
of the case; nor can he independently appeal from any judg-
ment or order already appealed from, more than ten days after

service upon him of written notice of the former appeal, unless such former appeal be afterwards dismissed."

This contention, we think, finds its answer in the fact already noticed by us, that the city has no right of appeal in this case. Surely a party without the right of appeal cannot, by an attempted appeal, limit the time within which a party to the real controversy may appeal, though a party possessing such right of appeal may by giving notice and perfecting his appeal, thereby limit the time within which another party may appeal, by virtue of the provision of § 1720 above quoted. The following decisions of this court render it plain that the city was not entitled to notice of Coughlin's appeal, because its rights could not be affected in the least by any disposition of the controversy between respondent and appellant Coughlin involved in his appeal. *Sudden & Christenson v. Morse*, 48 Wash. 101, 92 Pac. 901; *Sipes v. Puget Sound Elec. R. Co.*, 50 Wash. 585, 97 Pac. 723; *Iverson v. Bradrick*, 54 Wash. 633, 104 Pac. 130; *Exposition Amusement Co. v. Raeco Products Co.*, 55 Wash. 314, 104 Pac. 509; *Soderberg v. McRae*, 67 Wash. 104, 120 Pac. 878. It follows that no attempted appeal by the city could in the least curtail the right of Coughlin to appeal within ninety days following the entry of the decree, as provided by Rem. & Bal. Code, § 1718. We conclude that the motion to dismiss Coughlin's appeal must be denied. It is so ordered.

Counsel for appellant Coughlin contend that the trial court erred in decreeing his assessment lien, evidenced by the certificate of delinquency purchased from the city, inferior to respondent's mortgage lien. We are of the opinion that this contention must be sustained. Counsel for respondent invoke the general rule that tax liens are creatures of the statute and exist as an aid to the collection of taxes only to the extent of, and have no superiority over, other liens, except as the statute may so provide, citing, *Seattle v. Hill*, 14 Wash. 487, 45 Pac. 17, 35 L. R. A. 372; *Phelan v. Smith*, 22 Wash. 397, 61 Pac. 31; *Knowles v. Temple*, 49 Wash. 595, 96 Pac.

1; and decisions from other states; from which it is argued that the statute upon which this eminent domain local assessment lien is rested does not, in terms or by fair implication, render such assessment lien superior to a prior mortgage upon the land. Our own decisions above cited are not wholly decisive of the question here presented.

In *Seattle v. Hill*, the assessment lien was held superior to a prior mortgage lien, though the assessment statute did not expressly so provide, but provided for its collection as other taxes which were by general statute made superior to prior mortgage liens. The court there said:

"It is undoubtedly true that a prior mortgage on real estate is not displaced by a subsequent assessment for local improvements unless the statute authorizing such improvements and assessments by express words or fair implication otherwise provides."

The holding in that decision seems to have been rested upon the theory that the superiority of the assessment lien over a prior mortgage lien was not dependent upon an expressed provision of the statute to that effect, but that such conclusion might be reached by language of the statute fairly so implying.

In *Phelan v. Smith*, there was involved only the question of the lien of a personal general tax upon personal property. The facts of that case so clearly show that the specific lien there claimed did not exist under the terms of the statute that we think the decision is of no aid here.

In *Knowles v. Temple*, there was involved only the question of the time of the attaching of an assessment lien upon land as between vendor and vendee. The question of its superiority in favor of the city or its assignee over a prior mortgage or other private lien was not involved.

It seems quite clear to us that the superiority of appellant's eminent domain assessment lien does not necessarily depend upon the time of its creation as compared with the time of the creation of respondent's mortgage lien. The inherent

nature of 'the assessment lien may be such as to render it superior regardless of the question of its priority as to time. This assessment was levied in the exercise of the sovereign power of taxation (*Seattle v. Hill, supra*). This is no less true because the assessment was levied by a proceeding supplemental to an eminent domain proceeding. It was nevertheless levied to pay for the acquiring of land to widen a public street, and has the same legal sanction as any other local assessment based upon benefits to the property charged. We have had occasion to recognize this separateness of the assessment branch of the proceeding from the condemnation branch of the proceeding, though they are both prosecuted together in the superior court. Rem. & Bal. Code, §§ 7772, 7792 (P. C. 171 §§ 39, 79) ; *In re Third, Fourth, and Fifth Avenues*, 47 Wash. 109, 94 Pac. 1075, 95 Pac. 862 ; *Spokane v. Pittsburg Land & Imp. Co.*, 73 Wash. 693, 132 Pac. 633 ; *Commissioners Commercial Waterway District No. 2 v. Seattle Factory Sites Co.*, 76 Wash. 181, 135 Pac. 1042 ; *In re Pine Street Assessment*, 83 Wash. 281, 145 Pac. 179.

That the legislature may create a lien for taxes, whether such taxes be general or by local assessment, superior to all other liens regardless of priority of time, is settled beyond controversy. See note to *Seattle v. Hill*, 35 L. R. A. 372. The real question in this case is, Has our legislature, by the statute upon which appellant's eminent domain assessment lien rests, by fair implication, made such liens superior to prior mortgage liens? Let us turn to the statute and notice the procedure there provided through which such assessment liens are created. Referring to the law of eminent domain and local assessments to pay the expense thereof in cities, we find, after awards for taking and damaging of property are made by the court or jury, and the amount of funds necessary to be raised is thus ascertained, an assessment roll is made up by eminent domain commissioners, appointed by the court, charging property they find benefited by the city's acquisition of the property. This roll is then filed in

court, and an order made by the court fixing a time for hearing objections thereto by persons interested. Thereupon it becomes the duty of the eminent domain commissioners to give notice by mail to the owners of the property so shown to be assessed, whose names and addresses are known to them, also to cause notice to be posted in three public places in the city, one of which is to be in the neighborhood of the proposed improvement, also to cause notice to be published in a newspaper in the city. The statute makes no provision whatever for the service of notice personally upon any one. "Any person interested in any property assessed may file objections," and be heard before the court upon the question of benefits to property he is interested in and the justness of the assessment so returned by the eminent domain commissioners; the court having power to confirm, modify or correct assessment so made as the justice of the case may appear. The assessment being made and confirmed by the court, notice for its collection is published by the city treasurer. The time prescribed by the statute for paying the assessment having expired, those remaining unpaid at that time become delinquent, and upon due notice, the property charged with such delinquent assessment is offered for sale by the city treasurer, and for such tracts as there are no bidders, the city becomes the purchaser. A certificate of such delinquent sale thereupon issues to the purchaser by the city treasurer. "The purchaser at such sale acquires a lien on the property so bid in by him for the amount paid by him at such sale . . ." During the two years following, the property is "subject to redemption by the former owner or his grantee, mortgagee, . . ." If not redeemed within that period by someone so interested in the property, the purchaser at the sale, or his assignee, holding the certificate of delinquency, is entitled to a deed for the land from the city treasurer, upon giving notice to the owner and an opportunity to redeem before the issuance of such deed. "All assessments levied by any city

4—84 WASH.

under this act shall, from the date of the judgment confirming the assessment, be a lien upon the real estate upon which the same may be imposed, and such lien shall continue until such assessments are paid."

In addition to the remedy by sale of the land as above noticed, the city may enforce the lien of the assessment by an ordinary civil action of foreclosure in court. The statute contains no express provision in terms making the assessment lien superior to prior mortgages or other prior private liens. Rem. & Bal. Code, §§ 7787-7813 (P. C. 171 §§ 69-121). This procedure, we are of the opinion, points to a legislative intent to charge the assessment against the land itself regardless of its ownership, and regardless of all prior liens upon its ownership which rest upon private contract, or which of necessity are only a charge upon some person's title or interest in the land. Such private liens, of course, can rise no higher than their source. For, manifestly, no person can by contract create a lien upon land superior to his own title or interest therein, while the sovereign power of taxation can create a lien superior to every private interest in the land.

This procedure has all the indicia of a pure proceeding *in rem*; except possibly actual physical seizure of the land, which is not required in a proceeding *in rem* against land as it is in such a proceeding against personal property. The prescribed service of notice upon those interested in the land is only constructive (Black's Law Dictionary, page 255), no actual personal service of notice being required by the statute. This being the exercise of the sovereign power of taxation, as we already noticed, such constructive service satisfies all constitutional requirements of due process of law. 2 Jones & Paige, Taxation by Assessment, § 760; *Bauman v. Ross*, 167 U. S. 548. While the lien of the assessment may be enforced by ordinary civil action in court, it may also be enforced by the very common summary method of sale of the land and execution of a tax deed therefor by the city treas-

urer upon failure of those interested in the land, including mortgagees, to redeem within the time prescribed by law, without any further hearing whatever being awarded than upon the question of the validity of the assessment lien. This also satisfies all constitutional requirements of due process of law in the enforcement of tax liens. Black, Tax Titles, §§ 148, 149.

Counsel for respondent relies principally upon the fact that the statute makes no specific provision in terms touching the question of superiority of the assessment lien over prior mortgage and other private liens. That, however, we think, is not the final test of the superiority of the assessment lien. Its superiority rests in the fact that it is imposed by virtue of the sovereign power of taxation; that the procedure by which it becomes a charge upon the land is a proceeding *in rem* with no requirement for personal service of notice upon any person, and that the statute in terms makes it a lien *"upon the real estate"* without reference to any person's title or interest therein, which lien "shall continue until such assessments are paid." This conclusion is not without strong support in the decisions from other states. Indeed we think it is in harmony with the weight of authority.

In *Morey v. Duluth*, 75 Minn. 221, 77 Pac. 829, there was involved the question of the superiority of a local assessment lien over a prior mortgage, under a statutory procedure in substance the same as the statute which this assessment lien rests upon, there being no provision in the statute in terms making the assessment lien superior to mortgage or other private liens. In holding the assessment lien to be superior to the mortgage lien, Chief Justice Start, speaking for the court, said:

"It is true, as claimed by plaintiff, that the lien of the assessment attaches at a time fixed by the charter, that is: from and after the time of the confirmation of the assessment roll and filing thereof; but this does not justify the conclusion that the lien is subordinate to all prior liens on the

land, although the charter does not expressly declare that the lien of the assessment is paramount to all other liens.

"When the several provisions of the charter to which we have referred are read and considered together, it is clear that the only reasonable construction which can be given to them is that the lien of the assessment, when it once attaches, affects all interests in, or liens upon, the property without reference to the time when they are acquired. Therefore the assessment is the paramount lien on the property precisely as if the assessment were a general tax. Any other construction would practically defeat the whole scheme for local improvements provided for by the charter. The legislature had the undoubted power to so make the assessment the paramount lien. *Provident Institution for Savings v. Jersey City,* 113 U. S. 506.

"The proceeding authorized by the charter to charge land with the cost of local improvements to the extent of benefits received therefrom is one *in rem.* It is the whole interest in the land that is assessed for the improvement, not some particular estate therein. The improvement is for the benefit of all interests in the land, for that of the lienholder as well as that of the fee owner, and necessarily the lien of the assessment for the improvement must be coextensive with the estate benefited and assessed. 2 Blackwell, Tax Tit. § 695. If the land is sold under the judgment, the whole estate and interest of all parties therein passes to the purchaser, subject to the right of redemption, and the deed is made *prima facie* evidence of title in the grantee. The title conveyed by the deed is the whole interest in the land, not simply that of the fee owner.

"It is true that liens of the class to which assessment liens belong are purely statutory, and that their existence and extent depend on the statute. But our construction of the charter is that it does, by necessary implication, provide that the lien of the assessment on the property benefited by the improvement shall be paramount to all other interests therein, including prior mortgages or other liens thereon.

"It is further urged that under the provisions of the charter only owners of the land, in the strict meaning of the term, that is: those who possess the legal title, are permitted to appear and defend against the entry of judgment for the assessment; hence, the plaintiff being only a mortgagee, never had any right or opportunity to be heard. It is apparent,

however, from the provisions of the charter, that the word 'owner' is not used therein in its strict sense, but that it means persons interested in the land, which includes mortgagees. Thus, all persons interested in the assessment are given the right to appear at the hearing on the application for confirmation of the assessment, and it is the duty of the court to hear them."

In *Wabash Eastern R. Co. v. Commissioners of East Lake Fork Special Drainage Dist.*, 134 Ill. 384, 398, 25 N. E. 781, 10 L. R. A. 285, there was involved the question of the superiority of a local assessment over a prior trust deed, which was in effect a mortgage lien. Judge Bailey, speaking for the court, said:

"The next proposition submitted by counsel for the plaintiff in error is, that the deeds of trust having been executed and recorded long prior to the assessment or to the passage even of the act by which the assessment was authorized, they constitute a lien superior to that of the assessment, and that the decree therefore is erroneous in declaring the lien of the assessment superior and paramount to that of the deeds of trust.

"Section 72 of the Drainage Act provides that all assessments or levies thereafter made under the provisions of said act 'shall be taken, held and considered a lien upon each and every tract of land or property assessed in such district, to the extent and amount of the proportionate share assessed or levied against the same.' The lien thus created is not upon any specific interest in the land but upon the land itself, that is, upon the *res.* Special assessments are a species of taxation, peculiar in their nature it is true and subject to special rules. But the power to levy them is clearly referable to the taxing power. As said by Judge Cooley in his Treatise on Taxation, 'That these assessments are an exercise of the taxing power has over and over again been affirmed, until the controversy must be regarded as closed.' Cooley on Taxation, 623, and authorities cited in note. It follows that the lien given by the statute in case of such assessments is of the same nature and subject to the same general rules as that given in case of general taxes.

"A lien of this character attaches to the land itself, irrespective of the interests of the various owners, and is para-

mount to all other claims or liens against the property. In *Ostenberg v. Union Trust Co.*, 93 U. S. 424, which was a case involving a lien on land given by the revenue laws of this state, the court, in discussing the nature and extent of such lien, say: 'It is true that the title of a purchaser at a judicial sale under a decree of foreclosure takes effect by relation to the date of the mortgage, and defeats any subsequent lien or incumbrance. A lien for taxes does not, however, stand upon the footing of an ordinary incumbrance, and is not displaced by a sale under a pre-existing judgment or decree, unless otherwise directed by statute. It attaches to the *res* without regard to individual ownership, and when it is enforced by sale pursuant to the statute, prescribing the mode of assessing and collecting the same, the purchaser takes a valid and unimpeachable title.' So, in *Cooper v. Corbin*, 105 Ill. 224, this court said: 'Taxes levied upon real estate become a charge upon the land itself, and if they are not paid, the land may be sold for the taxes due thereon, and title will pass regardless of any incumbrance resting on the land.' Again, in *Jack v. Weiennett*, 115 Ill. 105, we said: 'The claim for the payment of taxes upon the citizen is, therefore, of necessity, paramount to all other claims against the property.' In the light of these authorities, and upon principle as well, it must be held that the lien of the assessment in this case is superior to that of the deeds of trust, and that the Circuit Court was correct in so holding.

"It is urged that the Drainage Law, so far as it attempts to give a lien for assessments superior to the liens of existing incumbrances, is unconstitutional because it violates the obligation of contracts or divests vested rights. This clearly cannot be so. Every property-owner holds his property subject to the exercise of the taxing power, and it is immaterial, so far as this question is concerned, what may be the nature of his interest, whether the fee, an estate in expectancy, an estate for years or a mere lien. This is true, as every one must admit, in relation to general taxes, where the only return to the tax-payer is the protection and security which the government gives him, and *a fortiori* should it be true in case of special assessments where, in theory at least, he receives an adequate and complete return for the money assessed in the enhanced value of the estate or property which he owns or to which his lien attaches."

In *Lybass v. Town of Ft. Myers*, 56 Fla. 817, 47 South. 346, Justice Whitefield, speaking for the court, said:

"The intention of the law making power to give priority to a municipal lien for local improvements over contract liens of individuals may be implied from the language of the law creating the lien and from the nature and purpose of the lien. . . .

"The general law provides that the city or town council shall have power 'to require the owners of real estate within the corporate limits to construct uniform and substantial sidewalks around their several lots, and to keep the same in repair; and upon failure to do the same within the time and manner prescribed, the said council may have the same done, which shall be a lien against said lots which lien may be enforced in the manner prescribed,' &c. Sec. 1017 General Statutes. This section of the law was enacted in 1887 and provides the lien. When the improvements are made the lien attaches, and being statutory and in the nature of a tax for governmental purposes has relation to the statute. The lien is to 'be enforced in the manner' of other liens.

"The mortgage lien was taken subject to the statute authorizing the municipal governmental lien for sidewalk improvements as well as to other governmental demands for taxes or municipal assessments. The lien is for an improvement that enhances the value of the property and consequently the value of all liens upon it. The improvement is primarily for a governmental purpose in the interest of the public welfare, and as such is entitled to priority if so intended by the legislature. The exigencies of all governments justify giving to governmental taxes, assessments and demands priority over private rights. As the lien is given by law in return for benefits to the property as well as for the common good, and as the action of the town is in its governmental capacity, the demand is in the nature of a governmental assessment and has priority over the rights of all persons having an interest in the property if it can be gathered from the language and purpose of the law that such was the intention of the lawmaking power. . . .

"If, as it seems, governmental statutory liens for local improvements may be made superior to mere contract liens of private parties acquired after the enactment of the statute providing for the lien, it is not necessary for the statute to

in terms enact the priority. From the nature of the governmental function being performed, and the rights of the public in the enforcement of the police powers, it is clear the intention of the legislature was to put such liens upon the same footing as tax liens, thereby giving them priority over contract liens of private parties acquired subsequent to the enactment of the law providing for the lien of the municipality for sidewalk improvements."

The only decisions called to our attention by counsel for respondent expressing a contrary view dealing with the question of the superiority of local assessment liens over prior private liens where the statute makes no express provisions as to superiority, are the Indiana decisions. *Cook v. State*, 101 Ind. 446; *State ex rel. Ely v. Aetna Life Ins. Co.*, 117 Ind. 251, 20 N. E. 144; *Pierce v. Aetna Life Ins. Co.*, 131 Ind. 284, 31 N. E. 68. We do not notice numerous cited decisions dealing with statutes which in terms expressly make local assessment liens superior to prior mortgages and other private liens. They are of no aid here.

Counsel for respondent also cite and rely upon the following decisions, dealing with the question of a personal property general tax lien upon land owned by the taxpayer, which hold, in effect, that such a tax lien attaches only to the title or interest the taxpayer may have in the land: *Miller v. Anderson*, 1 S. D. 539, 47 N. W. 957, 11 L. R. A. 317; *Bibbins v. Clark*, 90 Iowa 230, 57 N. W. 884, 59 N. W. 290, 29 L. R. A. 278; *Bibbins v. Polk County*, 100 Iowa 493, 69 N. W. 1007. Manifestly these decisions are of no controlling force here, because the obligation to pay the personal property general tax there involved would not be a lien upon the land of the taxpayer beyond the title or interest of such taxpayer in the land. It manifestly is not a pure charge *in rem* against the land, but being a charge dependent upon the taxpayer's interest in the land, would reach no further than that; in any event not unless the statute in the most plain and mandatory terms so provided. Indeed, the power of the legisla-

ture to make a personal property tax a lien upon the taxpayer's land beyond his interest in the land may well be doubted.

In *City of Paterson v. O'Neill*, 32 N. J. Eq. 386, where there was involved the question of the superiority of a general tax lien over a prior mortgage, the statute being silent so far as providing in terms that such tax lien was superior, there, as here, those interested in the land, including mortgagees, had the right to redeem within the statutory time following the tax sale. This fact appears to have been of controlling force upon the mind of the court in arriving at the conclusion that the lien of a mortgagee was inferior to the lien of the tax. Referring to this right on the part of the mortgagee to redeem, the court said:

"The city charter requires the land to be assessed for its full and fair value, and at the same time enacts that mortgages on the land shall not be taxed in the hands of any person in this state. From these provisions, exempting from assessment the estate of the mortgagee, but imposing the assessment for its full value against the owner, and making such assessment valid notwithstanding any error or omission in naming the owner, together with the further important provision that the mortgagee, tenant, or any person having a legal or equitable interest in the premises may redeem the same when sold at any time within twelve months from the issuing of the certificate of sale, I cannot doubt that the intention is evinced to make the lien of the tax paramount to that of the mortgage. Unless this be so, no good or satisfactory reason is perceived why this provision on behalf of the mortgagee was enacted. If his estate were intended to be left unaffected by and paramount to the tax, why should he need to redeem? Why redeem or buy back what had not been sold away?"

Having in mind that the superiority of the lien of a general and local assessment tax are each determinable by the same rules of construction, this view of the New Jersey court lends support to our conclusion, upon the same principle as do the Minnesota, Illinois and Florida cases above noticed.

Attention is called to our general revenue statutes and certain other of our local assessment statutes, which provide in terms that all mortgage and other private liens shall be inferior to the lien of general and local assessment taxes. The absence of such a provision from the statute upon which this assessment lien rests, it is insisted, indicates a legislative intent to render this assessment inferior to prior mortgages and other private liens, upon the theory that this and those statutes are *in pari materia.* The rule thus invoked, however, is after all only a rule of construction to be applied as an aid in determining legislative intent. We think that the language of this statute so plainly evidences a legislative intent to make this assessment a lien upon the land irrespective of all private title or interest therein, and superior to all mortgage and other private liens thereon, as to render the rule invoked of no value in the solution of this problem.

There is a marked distinction between a private lien which of necessity can only reach the title or interest of some person in land, and a lien upon the land apart from such interest. Proceedings to enforce the former are often loosely referred to as proceedings *in rem*, but they are not and cannot be purely *in rem* such as proceedings to enforce the latter may be if so authorized by statute. This thought finds expression in Phillips on Mechanics' Liens (3d ed.), § 306, where, discussing the nature and effect of a suit and judgment foreclosing a mechanics' lien, it is said:

"It is not a technical proceeding *in rem*, because it must be commenced, as in ordinary actions, upon account. It must be against some person by name as defendant, and can only be by virtue of a contract with the owner of the land. The judgment, likewise, must be rendered against some person as defendant, and cannot be against the land alone, as the lien extends only to his interest. There must be a suit against the party promising, not a mere proceeding *in rem*, regardless of contract."

A mortgage lien is manifestly of this nature, for, of course, a mortgagor cannot create a lien superior to his own title or

interest in the land. Vastly superior in force in this regard is the sovereign power of taxation as exercised in the creation of this assessment lien.

Upon principle, and as we believe, also, upon the weight of authority, we conclude that the decree of the trial court must be reversed, in so far as the eminent domain assessment lien held by appellant Coughlin is, in effect, decreed to be inferior to respondent's mortgage lien. It is so ordered, and the cause remanded to the superior court with directions to correct its decree so as to preserve the rights of appellant Coughlin under his local assessment lien as superior to respondent's mortgage lien.

MORRIS, C. J., CHADWICK, and CROW, JJ., concur.