[No. 2261.   Decided May 14, 1896.]

THE CITY OF SEATTLE, *Respondent*, v. G. A. HILL *et al.*, *Defendants*, ALONZO HULL, *Appellant*.

PUBLIC IMPROVEMENTS — LIEN OF ASSESSMENTS — PRIORITY OVER MORT-
GAGE.

The lien of an assessment for a local improvement is superior to
a prior mortgage on the property, under Laws 1893, p. 169, § 8, pro-
viding that such assessments shall be a part of the tax due on such
property and shall be collected as other taxes," and Laws 1893, p.
358, § 79, providing that the lien of taxes shall be superior to the lien
of mortgages.

Appeal from Superior Court, King County — Hon.
J. W. LANGLEY, Judge.   Affirmed.

*De Bruler & Jackson*, for appellant.
*W. T. Scott*, for respondent.

The opinion of the court was delivered by

GORDON, J.—The act of March 9, 1893, (Laws, p.
231) authorizes cities in this state to issue improve-
ment bonds in payment of the cost and expense of
local improvements, etc., and provides that such
bonds, when issued to the contractor constructing the
improvement or sold in the manner authorized by the
act, shall transfer to the contractor or other owner or
holder all the right and interest of such city in and
with respect to every such assessment and the lien
thereby created against the property assessed and
chargeable with the cost of such improvement.   This
action was brought by the respondent, a city of the
first class, to recover the amount due upon a local im-
provement bond issued to the contractor and by him
assigned to the city, and to foreclose the same on cer-
tain real estate owned by the defendants Hill and

chargeable with the cost of such improvement, in which action Alonzo Hull, the appellant, was made a party.

It appears that prior to the levying of the assessment or the issuance of the bond in question, defendant Hill had executed a mortgage upon the premises to Hull. Upon the trial below the court found that all of the proceedings necessary under the law and the charter and ordinances of said city to make the said assessment a legal charge and tax against the said property, including the letting of the contract for said improvement under the charter, the performance of the work under said contract and the acceptance thereof by the board of public works, were duly had; and entered a decree foreclosing the assessment bond against the property and giving the same priority over the mortgage to appellant; and from this decree the mortgagee Hull has appealed.

The real question to be determined is whether the lien of the assessment is entitled to superiority over appellant's mortgage which was prior in point of time. Appellant insists that the lien given for assessments and local improvements is not a lien of the force and extent of a tax lien. Whether this position can be maintained can be determined only from consideration of the various provisions of statute authorizing the assessment and providing the manner of its enforcement. Assessments levied for the improvement of a street are based upon the same sovereign power which is asserted in the levying of general taxes. *People ex rel. Griffin v. Mayor of Brooklyn*, 4 N. Y. 419 (55 Am. Dec. 266).

On page 433 of Elliott on Roads and Streets, the author says:

" While it is true that an assessment is not strictly a

tax, it is also true that it is levied by the sovereign power for the general public good. It is also true that a mortgagee is benefited to the extent that the land is improved, for to the extent that the land is improved to that extent is its value augmented. We cannot perceive why it is not in the power of the legislature to create a lien and give it priority over all private rights or estates. . . . Every one who acquires an interest in land takes it subject to the right of the sovereign to lay general taxes upon it and to impose upon it the burden of *paying the expense of public improvements which confer upon the land a special benefit.*"

It is undoubtedly true that a prior mortgage on real estate is not displaced by a subsequent assessment for local improvements unless the statute authorizing such improvements and assessments by express words or fair implication otherwise provides.

Subdivision 1, § 7, art. 8, of the charter of Seattle, under which this assessment was made, provides that, "The city council may levy and collect an assessment upon all lots and parcels of land benefited by such improvements to defray the cost and expense thereof, which assessment shall become a lien upon all property liable therefor." Sec. 8, art. 8, of such charter, provides for the giving of notice, in the official newspaper of the city, to interested persons, of the filing of the assessment roll, and affords an opportunity for objections, and also authorizes the council of the city to consider objections and make corrections as it shall deem just, and that it "shall then, by ordinance, approve such roll, and shall levy and assess the amounts thereof against each parcel and lot of land, declare the same a lien thereon, and shall direct the city clerk to deliver the roll to the city comptroller, who shall forthwith deliver to the city treasurer a certified copy thereof, upon receipt of which the treasurer shall pro-

ceed to collect *the same as other city taxes are collected."*
Said section further makes it the duty of the treas-
urer to give ten days' notice of the filing of such roll,
and that unless payment is made within thirty days
from the date of such notice such assessment shall
become delinquent, etc.    It also provides for a penalty
of five per cent. if the assessment is not paid before
becoming delinquent, " and the sums delinquent shall
be added to the annual tax roll for the current year
against each lot and parcel so delinquent, and with
the interest *collected as other taxes."*

Sec. 8 of the act of March 9, 1893 (Laws, p. 169),
relating to the assessment and collection of taxes in
cities of the first class, provides that delinquent local
assessments *" shall be a part of the tax due on such prop-
erty, and with interest shall be collected as ·other taxes."*
Sec. 79 of the act of March 15, 1893 (Laws, p. 358),
provides that the lien of all taxes lawfully imposed or
assessed " shall have priority to and shall be fully paid
and satisfied before any recognizance, mortgage, judg-
ment, debt, obligation or responsibility to or with
which said real estate may become charged or liable;"
and in the absence of such statutory provision it would
probably be found that taxes levied upon lands take
priority over every lien or incumbrance.    *Butler v.
Baily,* 2 Bay, 244; *Dunlap v. Gallatin County,* 15 Ill. 7.

It seems to us to follow that assessments for such
improvements are put upon the same footing as gen-
eral taxes upon real estate, and the liens created by
such assessments have precisely the same force and
effect.    Counsel for appellant rely mainly upon the
cases of *Cook v. State for the use of the Commissioner
of Drainage,* 101 Ind. 446, and *Trustees of Public
Schools v. Shotwell,* 45 N. J. Eq. 106 (16 Atl. 308),
neither of which cases we think applicable.    The In-

diana statute upon which the decision in *Cook v. State* was based, specifically provided that the assessment "shall be a lien upon the land so assessed from the time of filing the petition." And it appears that under the statute of New Jersey taxes become a lien only on the estate which the owner had at the time of the assessment, and that mortgages and incumbrances prior to the assessment are not affected by the tax. *Morrow v. Dows*, 28 N. J. Eq. 459.

It follows that the decree must be affirmed.

HOYT, C. J., and ANDERS, DUNBAR. and SCOTT, JJ., concur.