[No. 17489. Department One. November 25, 1922.]

THE CITY OF SEATTLE, *Respondent,* v. HENRY B. ALGAR *et al., Defendants,* DEXTER HORTON NATIONAL BANK OF SEATTLE, *Appellant.*[1]

MUNICIPAL CORPORATIONS (284)—NAVIGABLE WATERS (29)—ASSESSMENT—LIENS—PRIORITY—RECLAMATION OF TIDE LANDS. Under Rem. Comp. Stat., § 9372, providing that all local improvement assessment liens shall be paramount and superior to any other lien except a lien for general taxes, the latter are superior to a lien for the improvement of tide lands created by Id., § 9606, under a contract with the state in its proprietary capacity as owner of the tide lands.

Appeal from a judgment of the superior court for King county, Ronald, J., entered April 26, 1922, in favor of the plaintiff, upon sustaining a demurrer to the answer, in an action to foreclose a local assessment lien. Affirmed.

*Peters & Powell,* for appellant.

*Walter F. Meier, Hugh R. Fullerton,* and *J. Ambler Newton,* for respondent.

MACKINTOSH, J.—The city of Seattle began this action for the purpose of foreclosing a delinquent local improvement assessment for the grading and regrading of certain streets. An assessment was made against an undivided one-half of the west 270 feet of

[1] Reported in 210 Pac. 664.

lot 1, block 279, Seattle tide lands, which became a lien upon this property in March, 1910. The property was originally owned by the state of Washington, and in September, 1902, was sold by the state to one Carraher, by a deed in which it is stated that the conveyance was subject to any lien or liens that might arise or be created in consequence of or pursuant to the act of March 9, 1893. In the action by the city, the Dexter Horton National Bank appeared by filing an answer in which it claimed a lien upon the property in question superior to the local improvement lien sought to be foreclosed by the city; and as establishing the priority of its lien, the bank alleged that it held a certificate, issued in January, 1916, by the commissioner of public lands of the state of Washington, for work done by the Seattle and Lake Washington Waterway Company in filling in and raising the level of the property in question above high tide, and further alleged that this certificate had been issued in pursuance of the act of the legislature approved March 9, 1893. To this answer a demurrer was sustained, and, the bank standing upon its answer, a decree was entered in favor of the city, foreclosing its lien and determining that it was prior to the bank's lien, from which decree this appeal has been taken.

But one question is presented by this record; Whether the city's lien is prior to that of the bank.

In 1893, the state, being then the owner of a great area of tide lands situated within the corporate limits of the city of Seattle, and desiring to make this property more valuable, provided for the improvement of this property by the opening up of waterways through the tide lands and filling in the lands adjoining such waterways, so that they might be raised above high tide, thus giving them a commercial value and adding to the revenue of the state by their sale. The legislature,

to accomplish this purpose, passed the act of March 9, 1893, which provided for the work being done by private contract, § 4 of the act reading as follows:

"Upon the completion of the work, provided for by said contract, or any part thereof, capable of separate use for the purposes of navigation, according to the terms and conditions of said contract, and within the time provided therein, or such further extension of time as may have been granted by virtue of the preceding section, the commissioner of public lands shall issue his certificate to the contracting parties, or their assigns, showing the actual cost of the filling in and raising above high tide of all tide and shore lands so filled in and raised above high tide by such completion of said work, or such separate portion thereof, and specifying and describing, with reasonable certainty, the lands so filled in and raised above high tide. Upon the filing in the office of the county auditor of the county or counties in which such lands are situated, of such certificate of the commissioner of public lands, said contracting parties shall acquire a lien, and the same shall thereupon attach, for the amount specified in such certificate, with fifteen per cent additional thereon, and with interest on such amount and additional percentage from the date of such certificate at the rate of eight per cent per annum until payment: *Provided, however*, that such lien shall not be operative for an amount exceeding the cost of the work as stated in the contract, or, as the case may be, such portion of said stated cost as shall be proportionate to the part of the work with reference to which the certificate has issued, upon the bonds specified in such certificate. Such lien shall not be in solido; and upon the sale by the state to any person, or by any owner claiming under the state to any other person, of any of the tide and shore lands specified in such certificate, the lien herein granted may be discharged, as hereinbelow provided, as to any such part of said lands separately granted or owned, upon the payment of such part of the amount for

which the lien upon the lands was given in the first instance as shall bear the same proportion to said whole amount which the area of such separate part of such land bears to the area of the whole thereof. The amount due on such lien, or any proportionate part thereof separately payable as above provided, shall be payable by any owner of said lands, or any part thereof separately owned, as the case may be, other than the state, in ten equal annual installments, the first installment at the end of the first year after the sale of such lands, or of such separate portion thereof, by the state; and the remaining installments, one at the end of each year thereafter, with accompanying interest on each of such installments, as hereinbefore provided, to the time of the payment thereof, and such lien may be foreclosed in the manner provided by law for the foreclosure of other liens on real estate for non-payment of the whole amount due, or of any separate installment or installments thereof which shall have become due. If such lands specified in any such certificate shall not be sold by the state, within one year after the date of such certificate, the parties in whose favor such certificate was issued, or their assigns, shall have the option during the next succeeding six months to purchase such lands, or any part thereof, from the state in the manner provided by then existing laws for the sale of tide lands of the state. This chapter shall not be so construed as to create any obligation on the part of the state to pay or discharge any lien which may attach to such lands by virtue of the provisions thereof.'' Laws of 1893, p. 243, § 4; Rem. Comp. Stat., § 9606.

Pursuant to the authority granted by this act, in 1894 a contract was executed with the contractor who filled the lands in question here, the fill taking place subsequent to the conveyance by the state of the property to Carraher.

Section 9372, Rem. Comp. Stat., provides that all local improvement assessment liens "shall be paramount and superior to any other lien or encumbrance

whatsoever, theretofore, or thereafter created except a lien for assessments for general taxes.''

Appellant's argument is that, when the certificate was issued to the contractor, it represented a lien right in the contractor which dates back to the time that the contract was made, that is, October, 1894, and that when the state in 1902 conveyed the property to Carraher, it having expressly stated in its deed that it was subject to any liens that might arise or be created in pursuance of the act of March, 1893, the tide land fill lien was supported by an express contract made with the state, and was therefore superior to the local improvement assessment lien, and this in spite of the fact that in the section quoted above there is a provision that the lien shall be acquired by the filing of the certificate, and that the lien ''shall thereupon attach.''

In effect, the argument of the appellant is that the state of Washington had made a contract by virtue of which it had bound itself to insure the payment of liens arising under the contractor's operations. However, the final portion of the section of the act which we have quoted shows that the state expressly provided that no obligation was being contracted on the part of the state to pay or discharge any lien that might attach to the lands by reason of the act. In the case of *Seattle & Lake Washington Waterway Co. v. Seattle Dock Co.,* 35 Wash. 503, 77 Pac. 845, this court said:

''As we have seen above, this is not a debt of any public or municipal corporation. It is no debt at all, until some one purchases the land, and thereby assumes it, and agrees to pay for the improvements which the state, as owner, has permitted the waterway company to place upon the lands. It then, and for that reason, becomes a debt of the purchaser. Hence this provision of the constitution is not violated.''

Also in the case of *Hays v. Hill,* 23 Wash. 730, 63 Pac. 576, it was said:

"The act does not contemplate a retention of the tide lands by the state until the contract of filling in is complied with. The state retained the right to sell its tide lands or lease its harbor areas. By the act in question there was reserved to the contractor a lien only on the lands filled in under such contract."

The principle involved in this case seems to be analogous to that which was under consideration in *Everett v. Adamson,* 106 Wash. 355, 180 Pac. 144, where the court considered § 9393, Rem. Comp. Stat., providing that in the foreclosure of certificates of delinquency for general taxes the local improvement assessments must be paid, and held that that section applied to all assessment liens whether attaching before or after the issuance of the certificate of delinquency, the court saying:

"We cannot concede that contract is analogous to a proposition of this kind. To do so would be to invite a serious curtailment of the sovereign power of taxation—that power which is one of the supreme powers of the state. If we were to hold that the principle of contract applied in one instance in the field of taxation, we would logically be compelled to extend the whole of the principles of contract to the entire field of taxation. We have held consistently that taxation is a matter involving the sovereign power of the state and subject only to the limitations which that sovereignty has imposed upon itself, either in the constitutional or positive laws of the state. To read into the operations of the tax laws the particular principles which form the accretion of judicial precedent in matters of individual relationship and of contract would be an unwarranted invasion of the legislative power. The power to tax includes the power to retax and impose other burdens of taxation upon the same subjects of taxation, at the will of the supreme taxing power. The power to levy special assessments for public improvements, ac-

cording to the benefits, is delegated to the local authorities, but is wholly derived from the sovereign taxing power, and could assuredly be exercised in the first instance by it."

See, also, *Whatcom County v. Black,* 90 Wash. 280, 155 Pac. 1071.

The act of March, 1893, clearly was not intended to interfere with or deprive the state of its sovereign right of taxation. The levying of local assessments is an exercise of that sovereign right the same as the levying of assessments for general taxation; in the one case the right being exercised through the city as an agency of the state. As early as *Seattle v. Hill,* 14 Wash. 487, 45 Pac. 17, 35 L. R. A. 372, we held that "assessments levied for the improvement of a street are based upon the same sovereign power which is asserted in the levying of general taxes." The lien created by the act of 1893 and the contract made in pursuance thereof was a lien created by the state, not in the exercise of its governmental functions, but in its proprietary capacity as the owner of the tide lands of the state. If there is any question of the superiority of the liens, the tax liens would be in the very nature superior.

The court was therefore correct in sustaining the demurrer to the appellant's answer, and the decree is affirmed.

PARKER, C. J., BRIDGES, HOLCOMB, and MITCHELL, JJ., concur.