[No. 28218. Department Two. March 21, 1941.]

THE STATE OF WASHINGTON, *on the Relation of Sam Macri, Appellant,* v. THE CITY OF BREMERTON *et al., Respondents.*[1]

*Tom W. Holman* and *Harold A. Pebbles,* for appellant.

*Marion Garland* and *James W. Bryan, Jr.,* for respondents.

[1]Reported in 111 P. (2d) 612.

MILLARD, J.—In August, 1937, Sam Macri and the city of Bremerton entered into a written contract for the construction, by Macri, of a city sewer system. Under one of the provisions of that contract, Macri was obligated to indemnify and hold harmless the city of Bremerton from any and all claims for damages arising from or through the operation of contractor Macri, which provision included all claims for injuries or damages to the property or right of any person. The city was authorized, in the event of the failure of contractor Macri to obtain a valid release of any and all such claims prior to the final acceptance of the work, to settle or compromise such claims and charge the cost thereof to the contractor as so paid on the contract.

About four months prior to the completion of the work under the contract, Walter R. Warren filed with the city of Bremerton a claim, in December, 1937, for damages in the amount of four thousand five hundred dollars for alleged removal of lateral support to his land through the contractor's operations. Without notification to the contractor of the claim, the city rejected the claim.

Two months later, Walter R. Warren instituted an action upon the claim, naming as defendants the city of Bremerton, contractor Macri, and the contractor's surety. Although regularly served with process, the city did not appear; however, as disclosed by the statement of the trial court as dictated into the record, "the city attorney knew the suit was brought and wilfully refrained from defending." Macri and his surety duly appeared by motion and demurrer. Without joining final issue with the contractor and his surety, Warren obtained the entry of default against the city. Thereafter the court made findings as to the extent of damage to Warren's land and entered judgment against

the city, solely, in the amount of twelve hundred dollars, which judgment was taken without knowledge of Macri and his surety. Warren satisfied the judgment of record pursuant to the procedure prescribed by Rem. Rev. Stat., § 953 [P. C. § 8396], and demanded a warrant from the city in payment of that judgment.

The then city attorney of Bremerton, who is responsible for the city's wilful default, allowed entry and satisfaction of record of the default judgment, rejected certified copy of such judgment satisfaction as a claim, and appeared in, but did not resist, entry of decree in mandamus proceedings instituted June 22, 1938, by Warren to compel the city of Bremerton to issue to him a warrant in payment of his judgment. Macri and his surety had no notice of that proceeding.

The city then notified Macri and his surety of the mandate judgment and demanded that they pay same. Macri and his surety, after serving notice upon Warren, procured two orders, in the action instituted by Warren upon his claim, dismissing the action against them. The city was notified through its then city attorney that Macri and his surety would not pay the mandate judgment, and that they would hold the city responsible for any payment thereof from Macri's retained percentage of the contract price for the sewer construction. Despite that notice, the city paid Warren out of that retained percentage the amount of the mandate judgment.

August 29, 1938, Macri instituted an action in mandamus to compel the city and its officers to accept full performance of the work under the contract, to certify such acceptance, and to issue to contractor Macri a city warrant in the amount of $6,064.67 in full payment of the work. The city pleaded as a partial defense its payment of the judgment in the Warren damage action. Trial to the court resulted in entry

of a decree awarding Macri the total amount of the retained percentage in the amount of $6,058.10 "less any claims filed as provided for by law." The city did not appeal from that decree, nor did it formally accept Macri's work or pay to him the amount of the retained percentage ·as fixed by the decree. It submitted, instead, to Macri, and insisted upon his. acceptance of, two claims designated "purchase requisitions," the effect of which was to deduct from the retained percentage amounts representing the Warren judgment and also two other damage claims which were subsequently disallowed.

Macri thereupon instituted contempt proceeding to compel obedience by the city and its officers to the decree and peremptory writ of mandate. The defense pleaded in the contempt proceeding was payment by the city of the judgment in the Warren action. The trial court held that the Warren judgment was a proper deductible item, on the theory that it had been concluded by the Warren litigation. Macri appealed from that judgment.

We held (*State ex rel. Macri v. Bremerton,* 2 Wn. (2d) 243, 97 P. (2d) 1066) that the basic controversy between the parties throughout the various stages of: the action had always been whether the claim originally asserted by Warren was one for which Macri was legally liable and, if so, to what extent; that Macri's covenant to hold harmless the city against claims for damages had reference to damages arising from legal liability, and in so far as the city acted as a mere volunteer in paying Warren, the city could not look to Macri for indemnity. We concluded that the principal question that should have been presented and decided in the trial court was whether, or to what extent, there were any valid claims which should be deducted from the amount of the retained percentage. The judgment

was reversed, and the cause remanded with direction to the trial court to proceed in accordance with the foregoing views.

Pursuant to the foregoing, a further hearing was had which resulted in findings that Macri was entitled to judgment against the city of Bremerton in the amount of $6,058.10, with costs which included the statutory attorney's fee of ten dollars. The trial court specifically found that Macri had been compelled to secure, and there had been furnished him, very considerable legal services in this litigation, and that such services were to an unusual extent required by the conduct of the city officers; and that the reasonable value of such legal services as sustained by the uncontroverted evidence is fifteen per cent of the total amount to be recovered by Macri in this litigation. However, the trial court was convinced that an attorney's fee in excess of the amount fixed by statute was not recoverable. Judgment was entered in consonance with the foregoing. The city's tender of cash payment of the judgment, including the statutory attorney's fee of ten dollars, was accepted with the exception of the item of ten dollars. The appeal is prosecuted by Macri from that portion of the judgment which awards to him only the statutory attorney's fee of ten dollars.

The sole question presented by this appeal is whether, by reason of the fact that the city was adjudged to have wrongfully paid from and withheld the balance of appellant contractor's retained percentage earned under the public works contract in question, the contractor was entitled to recovery against the city, as costs or damages, an attorney's fee in excess of the amount fixed by statute (Rem. Rev. Stat., § 481 [P. C. § 7462]), in action against the city to collect the retained percentage.

Counsel for appellant contend that retained percentage funds, held by virtue of the public improvements contract statute (Rem. Rev. Stat., § 10320 [P. C. § 9727-1]), are trust funds and cites, as sustaining authority for the position that the trial court should have allowed a reasonable attorney's fee to appellant contractor against respondent city, *Longview School Dist. No. 112 v. Stubbs Electric Co.*, 160 Wash. 465, 295 Pac. 186, although counsel are mindful that that case

" . . . involved an indemnitor's rights under subrogation of the surety's claim to protection because of the school district's premature payment to its contractor Hammond from the retained percentage fund."

In *Longview School Dist. No. 112 v. Stubbs Electric Co.*, 160 Wash. 465, 295 Pac. 186, the school district appealed from a judgment in favor of Stubbs Electric Company. The judgment was entered upon the pleadings of the parties and an agreed statement of facts. The retained percentage of the contract price amounted to four hundred and ninety-five dollars for a period of thirty days after the completion of the contract and acceptance by the architect. The school district breached the contract and bond by paying to Hammond the full contract price before the expiration of the thirty-day period. Within the thirty-day period, the Time Recording Company presented to the surety an unpaid claim in the amount of nine hundred and sixty-seven dollars for materials furnished Hammond in the work. The surety, in turn, referred the claim to the Stubbs Electric Company, the indemnitor. The surety then demanded of the school district payment of four hundred and ninety-five dollars to apply on the claim of the Time Recording Company. The school district refused to pay. The Time Recording Company recovered judgment against the surety for nine hundred and sixty-seven dollars and interest, including attorneys'

fees of one hundred and twenty dollars and costs in the amount of $33.20.

In accordance with the indemnity agreement, Stubbs Electric Company satisfied that judgment, in addition to which the electric company paid attorneys' fees and costs of one hundred and fifty-three dollars incurred by the surety in defending the action brought against it by the time recording company. The trial court held that the electric company was entitled to be subrogated to the rights of the surety company, as against the school district, and awarded judgment against the school district for $801.20, from which judgment the school district appealed.

Two questions were presented to this court: First, did the doctrine of subrogation apply? We answered that question in the affirmative. The second question was whether the school district was liable for the attorneys' fees and costs amounting to $306.20. It will be remembered that the attorneys' fees were one hundred and twenty dollars awarded the plaintiff in its judgment against the surety and "attorneys' fees and costs of $153" incurred by the surety in defending the action brought against it by the Time Recording Company. The school district insisted on appeal that Stubbs Electric Company was not entitled to recover in excess of four hundred and ninety-five dollars, the amount which the school district was required to retain for a thirty-day period after acceptance of the work by the architect and which the school district paid to Hammond before the expiration of the thirty-day period; that the electric company was not entitled to recovery of attorneys' fees and costs amounting to $306.20. No point was made that attorneys' fees recoverable by a successful litigant were limited by the statute. Counsel for respondent argued that the electric company, as an indemnitor of the surety, who paid a judgment against

the surety, was subrogated to all of the rights of the surety; and that, as the natural and proximate consequence of appellant's wrongful act involved the electric company in litigation with others, the electric company was entitled to a recovery in damages against the school district, the author of the act, of the reasonable expenses incurred in such litigation together with compensation for attorneys' fees and such costs as may have been awarded the plaintiff, the Stubbs Electric Company in that case. 17 C. J. 809, and *Curtley v. Security Savings Society*, 46 Wash. 50, 89 Pac. 180, were cited as sustaining authority.

The doctrine of subrogation was involved in *Longview School Dist. No. 112 v. Stubbs Electric Co., supra*, and the basis of our decision, that the respondent was entitled to an allowance of attorneys' fees and other expenses as damages incurred in collateral proceedings as the natural and proximate consequence of the admittedly wrongful act of the school district, distinguishes that case on the facts from the case at bar. As stated above, no argument was made, nor was the question discussed in brief or opinion, whether attorneys' fees, apart from the amount allowed and taxed as costs pursuant to statutory authority therefor, could be recovered as damages or as costs. In the case at bar, the action is between the two litigants, and there has not been at any time an action against a third party for which appellant could successfully claim an attorney's fee as part of his damage.

In *Curtley v. Security Savings Society*, 46 Wash. 50, 89 Pac. 180, in which a vendee brought an action to recover damages for failure of title, we held that the fees paid by the vendee to counsel for defending an action brought against him for a breach of the building contract which was involved in that case, were recoverable by the vendee as a part of the damages he

sustained by reason of failure of title to the property he was purchasing under his contract. This is in harmony with some authorities to the effect that attorneys' fees incurred in good faith in an endeavor to save one's self from loss occasioned by the wrongful act of another may be recovered in an action against the wrongdoer. 17 C. J. 809-811, § 135.

The rule governing the allowance of costs in civil actions has been settled so long that an extensive discussion at this time of the subject would not be warranted, if it were not for the reliance of counsel for appellant on *Longview School Dist. No. 112 v. Stubbs Electric Co.*, 160 Wash. 465, 295 Pac. 186 (which is distinguishable from the case at bar), and the confidence with which counsel for appellant press the point that, in the absence of contract, the court may allow counsel fees in excess of the fees fixed by statute to a successful litigant in a civil action.

■ This proceeding—the case at bar—for a writ of mandate is but another form of civil action. *State ex rel. LaFollette v. Hinkle*, 131 Wash. 86, 229 Pac. 317. Under the statute (Rem. Rev. Stat., § 481) "costs to be called the attorney fee" which may be allowed to a successful litigant in a civil action are limited to ten dollars in all actions where judgment is rendered without a jury.

■ Apart from the sums allowable and taxed as costs, there can, as a general rule, be no recovery as damages of the costs and expenses of litigation. If recovery is sought by appellant of attorneys' fees in excess of the statutory allowance thereof as "damages," it should be borne in mind that the term "damages" is in its legal sense defined as meaning the compensation which the law will award for an injury done. 17 C. J. 807. In its early signification, the term was held to include costs, but the terms are now regarded as

distinct and costs are awarded as damages only where the circumstances of the particular case withdraw it from the general rule. 17 C. J. 710.

■ The term "costs" may be considered as synonymous with the term "expense." Costs are allowances to a party for the expense incurred in prosecuting or defending a suit. 15 C. J. 20. The word "costs" in the absence of statute or agreement does not include counsel fees; in other words, the general rule is that counsel fees are not costs either in suits in equity or actions at law.

"The amount and items recoverable as attorneys' fees must of course depend on the statutes or stipulations of the parties authorizing their allowance. Although there is some authority to the contrary, if a specific amount is prescribed by statute, the court cannot allow a greater sum." 15 C. J. 117.

■ This action is governed by the rule which applies in all ordinary civil actions; that is, the successful litigant may recover only such attorney fees as the statute or agreement of the parties provides shall be taxed as costs in the action. *Easterbrooks v. Abrahams*, 200 Wash. 636, 94 P. (2d) 486.

In *Enbody v. Hartford Accident & Indemnity Co.*, 147 Wash. 237, 265 Pac. 734, we said:

"The statute (Rem. Comp. Stat., § 481) [P. C. § 7462] allows, in all cases, to the prevailing party certain specified sums called attorney's fees to be taxed as costs, and in certain other instances it provides specially for the recovery of attorney's fees expended in a former action to be recovered in another (see Rem. Comp Stat., § 654) [P. C. § 7386]. But the general rule, in the absence of statute, is not to allow such a recovery. *Lovell v. House of the Good Shepherd*, 14 Wash. 211, 44 Pac. 253; *State ex rel. Maltbie v. Will*, 54 Wash. 453, 103 Pac. 479, 104 Pac. 797; *Gabrielson v. Gorin*, 92 Wash. 408, 159 Pac. 387. An exception is made in the instance where the damages sought are for the wrongful issu-

ance of an injunction, but this is so hedged about with limitations as to make the rule inapplicable to other situations. More than this, the rule is one that the court does not desire to extend."

In *State ex rel. Maltbie v. Will,* 54 Wash. 453, 103 Pac. 479, 104 Pac. 797, we held that, in a mandamus proceeding by a county officer to secure a salary warrant, an attorney's fee incurred in prosecuting the action cannot be allowed as damages, but only as statutory taxable costs. We said:

"The appellant insists that he is entitled to recover $200 attorney's fees from Douglas county, as his damages incurred by reason of the refusal of the county officers to allow and pay his claim. This contention cannot be sustained. The statute of this state fixes the attorney's fees that may be allowed to a successful litigant as costs in civil actions, and no additional fees for their prosecution should be allowed without statutory authority."

Equity may allow counsel fees to complainant who has maintained a successful suit for preservation, protection, or creation of common fund or who has created or brought into court such fund. The rule, however, allowing complainant counsel fees for creating or preserving common fund is not applicable to the facts in the case at bar.

*Sprague v. Ticonic Nat. Bank,* 307 U. S. 161, 83 L. Ed. 1184, 59 S. Ct. 777, is an equity case in which the United States supreme court held that, when a litigant in a Federal district court, through the prosecution of a suit on his own behalf and at his own expense, has affixed a lien on earmarked funds in an insolvent bank for the repayment in full, with ordinary costs and interest, of a sum theretofore deposited by him in trust, and, by so doing, has incidentally, through the principle of *stare decisis,* established like rights for other depositors, not parties to the suit, but in like situation,

it lies within the power of the court as a court of equity to make the successful litigant an allowance of costs "as between solicitor and client," for counsel fees and litigation expenses, to be paid out of the earmarked funds. *Sprague v. Ticonic Nat. Bank, supra,* is clearly distinguishable from the case at bar.

In *Houston Oil Terminal Co. v. Shreveport,* 172 La. 994, 136 So. 29, the supreme court of Louisiana held, following the general rule, that, in absence of contract, statute, or recognized ground of equity, attorney fees are not recoverable by a successful litigant as "costs"; that a materialman is not entitled to recover counsel fees for instituting suit against city for payment from balance due paving contractor.

In *Jenkins v. Commercial Nat. Bank of St. Anthony,* 19 Idaho 290, 113 Pac. 463, it was held, in an action for damages for the wrongful foreclosure of a chattel mortgage, that the successful plaintiff could not recover attorneys' fees in view of the absence of statutory authority or express agreement of the parties therefor. *Cline v. Stratton,* 233 Ky. 568, 26 S. W. (2d) 487, in which counsel fees were allowed in an action for settlement of an estate falls within the rule that equity may allow counsel fees to a litigant who has successfully maintained suit for preservation, protection, or creation of a common fund.

In *Guay v. Brotherhood Building Ass'n,* 87 N. H. 216, 177 Atl. 409, 97 A. L. R. 1053, it was held that attorneys' fees incurred by mortgagor in maintaining its rights against a premature foreclosure by the holder of the mortgage were not recoverable as an element of damages from the wrongdoer. The court said:

"The second exception is to the refusal of the master to allow as damages the counsel fees incurred by the defendants in maintaining their rights against the premature foreclosure by the plaintiff's testatrix. It

is not enough to say that the foreclosure is wrongful, illegal, or tortious. Ordinarily one suffering from such a wrong cannot recover the counsel fees incurred in resistance of it, but will be limited to the attorney fee allowed by statute to be taxed as costs. The case of *Chartier v. Marshall*, 56 N. H. 478, obscure in its facts and with no definite discussion of the principles involved, cannot be regarded as authority to govern the situation here presented, even if it has not in fact been overruled by the later cases.

"Counsel fees other than statutory costs have been allowed under certain classifications. They include (1) cases of enforcement of judicial authority, as where misconduct of a party amounting to contempt of court has caused the opposing party to incur counsel fees (*Barber v. Company*, 80 N. H. 507, 511, 512), or where a person retains possession of property after a judicial determination of the wrongful character of his possession, thus forcing the party wronged to the expense of further proceedings to recover possession or otherwise enforce his rights (*Fowler v. Owen*, 68 N. H. 270; *Manchester v. Hodge*, 75 N. H. 502; *Jacques v. Company*, 78 N. H. 248). Even in the second proceeding to enforce rights judicially declared in a prior action, the wronged party is not allowed anything for counsel fees in the first litigation. His only right as to counsel fees in the earlier proceeding is to have the statutory costs taxed therein. *Hersey v. Hutchins*, 71 N. H. 458.

"(2) Counsel fees other than those permitted by statute may be allowed by the court as the price of terms. Thus they may be taxed against the applicant for a new trial in some cases as terms for the granting of the motion. *Watkins v. Railroad*, 80 N. H. 468. And a party guilty of misconduct in consequence of which a mistrial is ordered may properly be required to pay counsel fees to the opposing party as the price of another trial. *Moses v. Craig*, 77 N. H. 586.

"(3) Counsel fees may be allowed as damages in cases where there is contractual liability. Such liability may exist where the contract is to be interpreted as expressly providing for their payment, as in injunction bonds (*Derry Bank v. Heath*, 45 N. H. 524; *Sol-*

*omon v. Chesley,* 59 N. H. 24) and in sheriff's bonds (*Hoitt v. Holcomb,* 32 N. H. 185, 211); or it may be implied in some cases of indemnity, as where the party indemnified calls in the indemnitor to defend a suit upon the obligation the latter has agreed to pay (*Fairfield v. Day,* 71 N. H. 63). It may also be implied in cases where expenses by one of several interested parties have tended to the common benefit of all and the one may have contribution from the others (*Rollins v. Rice,* 59 N. H. 493, 498).

"(4) Counsel fees other than statutory costs may also be allowed to a stakeholder out of the *res,* as (a) in the case of a trustee's petition for instructions (*Rollins v. Rice, supra*), (b) in petitions for partition and (c) in bills of interpleader, where the stakeholder may have costs attendant upon his bringing the fund and the question of the rights of adverse claimants into the court for adjudication (*Farley v. Blood,* 30 N. H. 354, 374), counsel fees sometimes being allowed as a charge against the fund.

"(5) In domestic relations cases the court has some discretionary powers relative to allowing substantial counsel fees. In divorce proceedings the power is limited. The court (a) may allow a wife who is libelee a reasonable sum to prosecute her defence when she appears to have a good defence and is without property, (b) denies such fees to a wife who is libelant pending the proceedings, but (c) may take the expenses of her suit into account, if she is given a divorce, in the award of alimony. *Wallace v. Wallace,* 75 N. H. 217. The principal possibly extends to proceedings involving the custody of children.

"The case here falls into none of these classes, and if the foregoing analysis is not exhaustive, the counsel fees to which these defendants are entitled seem clearly subject to the statutory regulation and not distinct therefrom upon any principle heretofore recognized. The master's ruling was correct."

In *State ex rel. Risch v. Trustees,* 121 Wis. 44, 98 N. W. 954, it was held, under a statute similar to ours (Rem. Rev. Stat., § 481), that a mandamus proceed-

ing is a civil action and is governed by the statute relating to costs; and that the right to reasonable costs in an action or other judicial proceeding is a creature of the statute.

In a concurring opinion in *State v. Pearl,* 163 Wash. 268, 1 P. (2d) 315, it was observed that, while the courts did not at the common law have authority to award costs in criminal proceedings, and, in the absence of statutory authorization therefor, a judgment for costs can not be rendered against a state in a criminal case (*United States ex rel. Phillips v. Gaines,* 131 U. S. clxix Appendix), immediately prior to our Revolution, costs were awarded pursuant to statutes to the victorious litigant in those cases in which the king was not a party; and that those statutes are a part of the common law of this country.

Attention was directed to *Harrigan v. Gilchrist,* 121 Wis. 127, 99 N. W. 909, in which one of the questions discussed was whether the legislature was empowered to require security for costs as a condition of invoking the jurisdiction of the supreme court of that state. The appellants referred to the constitutional provision conferring appellate jurisdiction upon the Wisconsin supreme court, and also referred to that portion of the bill of rights adopted from Magna Carta providing that " 'Every person ought to obtain justice freely and without being obliged to purchase it, completely and without denial, promptly and without delay.' " The court stated that statutes such as those which required security for costs as a condition of invoking the jurisdiction of the appellate court had existed in the face of similar constitutional provisions for more than one hundred years; that courts exercised authority of a like nature theretofore, though "fenced about by Magna Carta." The provisions of the bill of rights in the Wisconsin constitution, the

court held, granted no new right but guaranteed one existing at common law. The court said:

"The burdens which the Magna Carta provision was designed to lift and secure immunity from, bear no resemblance whatever to those legitimate expenses of litigation which we call costs, or security for the payment thereof, to the prevailing party. They were those exactions, common once, when standards of official conduct, as regards judicial administration, were so incomparably lower than in modern times that we can hardly appreciate how they could ever have been deemed justifiable, as they doubtless were. They were bribes, so to speak, demanded and received by officers exercising judicial power in the king's courts, in the nature of consideration for the use of judicial machinery. In effect, justice was to some extent a matter of bargain and sale. The exactions were not to pay for any legitimate expense, but went to enrich the judicial head, or some one acting thereunder and by his authority. Strange as it may seem, that practice was not deemed to involve any moral turpitude. It was supposed to be to such a degree attributable to sovereign prerogative that the uprooting thereof was accomplished only by a formal relinquishment by the sovereign and a grant to the people, the form thereof being this: 'We will not sell the right and justice to any one, nor will we refuse it, or put it off.' Sir Edward Coke's explanation of the scope of that pledge would seem to have given rise to the phrasing of the idea as we now find it in our own and other constitutions:

" 'The king, in the judgment of the law, is ever present and repeating in all his courts, *"Nulli vendemus, nulli negabimus, aut differemus rectum vel justitiam"* (We neither sell nor deny, nor delay, to any person, equity or justice), and therefore every subject, for injury done him *"in bonis, in terris, vel persona"* (in person, goods, or body) by any other subject, be he ecclesiastical or temporal, without any exceptions, may take his remedy by the course of the law and have justice and right for the injury done to him, freely without sale, fully without any denial, and speedily without delay.'

"In construing any provision of the bill of rights taken from the English Charter, it must not be forgotten that no new restriction was intended thereby, but that the sole purpose thereof was to preserve those valuable safeguards against excessive use of sovereign authority that had become a distinguishing characteristic of English liberty. That idea cannot be found better stated than by COOLEY, J., in *Weimer v. Bunbury*, 30 Mich. 201, 214:

" 'The truth is, the bills of rights in the American constitutions have not been drafted for the introduction of new law, but to secure old principles against abrogation or violation. They are conservatory instruments rather than reformatory; and they assume that the existing principles of the common law are ample for the protection of individual rights, when once incorporated in the fundamental law, and thus secured against violation.'

"It is suggested, as conclusive evidence that the right to use judicial remedies under the common-law system was free and that the provision of our bill of rights referred to was designed to prevent conditions thereof being created here, that appeals in England were always allowed, even to the House of Lords, without any burdens being imposed on the appellant. A more careful examination of the subject would have shown that the right to impose reasonable conditions as to costs and security for costs was never questioned in the English courts. Special favors, it is true, were granted to persons in need thereof, to sue *in forma pauperis*, upon proof being made that otherwise justice would be denied (1 Dan. Ch. Pr. [6th Am. ed] 38, 155); but generally, costs and security for costs, in some form, in personal actions, were exacted, after the days of Magna Carta. At first the system was somewhat after the course of the old mischievous custom, though shorn of the real wickedness thereof, since the exactions were required as amercements in the nature of revenue for the sovereign. The imposition went against the losing party as a penalty: in the case of the plaintiff for unjustly bringing the defendant into court; and in the case of the defendant for unreasonably resisting the plaintiff's demand. 3 Bla. Com. 399. Later

by legislation costs were given the plaintiff, when a prevailing party, but not to the defendant under the same circumstances. 6 Edw. I, c. 1. Subsequently the same privilege was extended to defendants. 23 Hen. VIII, c. 15. Soon amercements for the enrichment of the sovereign treasury were abolished. 24 Hen. VIII, c. 8. Laws providing for security for costs naturally followed. By the statutes of 3 Jac. I, c. 8, and 3 Car. I, c. 4, §4, it was provided that in personal actions, with few exceptions to fit particular cases: 'No writ of error should be allowed, unless the party bringing the same, with two sufficient sureties, shall first be bound unto the party for whom the judgment is given, by recognizance to be acknowledged in the same court, in double the sum to be recovered by the former judgment, to prosecute the said writ of error with effect, and also to satisfy and pay, if the said judgment be affirmed, or the writ of error non prossed, all and singular the debts, damages, and costs adjudged upon the former judgment, and all costs and damages to be awarded for the delaying of the execution.' 3 Bla. Com. 411, note. Long before the separation of this country from England Blackstone said in giving the state of the law as it then existed:

" 'If a writ of error be brought . . . after verdict, he that brings the writ or that is plaintiff in error, must find substantial pledges of prosecution, or bail: to prevent delays by frivolous pretences to appeal; and for securing payment of costs and damages, which are now payable by the vanquished party in all, except in a few particular instances, by virtue of the several statutes.'

"Thus it will be seen that substantially every element in our statutes as to costs and security for the payment thereof, is found in the laws of England as they existed before the Revolution, and that it was never supposed there was anything in Magna Carta inconsistent therewith. By gradual approaches, so to speak, the doctrine of the civil law in its·entirety was reached and engrafted upon the English system: '*Victus, victori in expensis condemnandus est*,'—the vanquished is to be condemned in costs to the con-

queror. We inherited the principle thereof as part of the common law. In some form it has found a place in the code of every state of the Union that has followed common-law ideas, notwithstanding the adoption at the same time, in the constitutions of such states, of the essential principles of Magna Carta.

"We often see it stated that costs are a creature of the statute; that costs were not given at common law. *Wisconsin C. R. Co. v. Kneale,* 79 Wis. 89, 95 N. W. 248; Parsons, Costs, §1. That is liable to be misunderstood by not considering that the common law of England is not synonymous with the common law of this country. The former does not include the English statutes. As the only way costs were imposed before such statutes was by amercements for the benefit of the king, or possibly an addition to the verdict or the judgment of the jury (5 Ency. Pl. & Pr. 108), it is right to say costs were not allowed by the common law of England. But the principles of the English statutes amending the common law and existing at the time of our Revolution, suitable to our condition and in harmony with our constitution and statutes, are a part of the common law of this country. *Coburn v. Harvey,* 18 Wis. 147; *Kellogg v. C. & N. W. R. Co.,* 26 Wis. 223. As only the principle of the English statutes as to costs and security for costs has been regarded as thus made a part of the common law of this country, the idea that costs are regulated wholly by statute is of course true. *Nash v. Meggett,* 89 Wis. 486, 494, 61 N. W. 283." 121 Wis. 127, 99 N. W. 909.

In 3 Blackstone's Commentaries 399 (2 Cooley's Blackstone (4th ed.), 1153) Justice Blackstone says:

"Thus much for judgments; to which costs are a necessary appendage; it being now as well the maxim of ours as of the civil law, that *'victus victori in expensis condemnandus est'* (he who loses the suit pays costs to his adversary): (*p*) though the common law did not professedly allow any, the amercement of the vanquished party being his only punishment. The first statute which gave costs, *eo nomine* (by that name), to the defendant in a real action was the

statute of Gloucester, 6 Edw. I, c. 1, as did the statute of Marlbridge, 52 Hen. III, c. 6, to the defendant in one particular case, relative to wardship in chivalry: though in reality costs were considered and included in the *quantum* of damages, in such actions where damages are given; and, even now, costs for the plaintiff are always entered on the roll as increase of damages by the court. (*q*) But, because those damages were frequently inadequate to the plaintiff's expenses, the statute of Gloucester orders costs to be also added; and farther directs, that the same rule shall hold place in all cases where the party is to recover damages. And, therefore, in such actions where no damages were then recoverable (as in *quare impedit,* in which damages were not given till the statute of Westm. 2, 13 Edw. 1), no costs are now allowed; (*r*) unless they have been expressly given by some subsequent statute. The statute 3 Hen. VII, c. 10, was the first which allowed any costs on a writ of error. But no costs were allowed the *defendant* in any shape, till the statutes 23 Hen. VIII, c. 15, 4 Jac. 1, c. 3, 8 and 9 Wm. III, c. 11, 4 and 5 Ann. c. 16, which very equitably gave the defendant, if he prevailed, the same costs as the plaintiff would have had, in case he had recovered. These costs on both sides are taxed and moderated by the prothonotary, or other proper officer of the court."

An examination of the authorities discloses that the idea, as observed in *Harrigan v. Gilchrist, supra,* that costs are regulated wholly by statute is true; and that a party who claims to be entitled to a judgment for costs against his adversary must bring himself within the operation of some statutory provision.

"In actions at law costs are not recoverable, except pursuant to statutory enactment. The court may not award costs to the successful party; nor, in a case which is within the purview of the statute according a right to costs, has the court any discretionary power as to the award or allowance. Under the statutes the rule is universal, apparently, that in an action at law the right to recover costs is established by, and de-

pendent on, the judgment rendered, or, as it is expressed 'costs follow the result as of course.'

"The statutes in some instances have declared that the prevailing party shall recover his costs in all civil actions or proceedings of any kind. Other statutes allow costs to the successful party as a matter of right or 'of course' in actions or proceedings which involve controversies as to certain subjects of litigation, such as the title to, or possession of, real property and demands for money or damages.

"In equity proceedings the allowance and imposition of costs, unless otherwise governed by statute or rules of court, do not always follow the outcome of the suit, but rest in the sound discretion of the court according to the justice of the cause or the facts and circumstances of the particular case." 14 Am. Jur. 15-16.

"The right to recover attorneys' fees from one's opponent in litigation as a part of the costs thereof does not exist at common law. Such an item of expense is not allowable in the absence of a statute or of some agreement expressly authorizing the taxing of attorneys' fees in addition to the ordinary statutory costs. This rule is not changed by the fact that fraudulent or malicious acts are disclosed, although in certain circumstances fraud or malice may furnish a basis for the recovery of the expenses of litigation, including counsel fees, as an element of damages . . .

"The term 'costs' or 'expenses' as used in a statute is not understood ordinarily to include attorneys' fees." 14 Am. Jur. 38.

"A court has no power to award costs unless such power is derived from statute. It has been held that the exercise of this power by the United States Supreme Court, sitting as a court of original jurisdiction in equity, is incidental to its authority as a court of equity, although such power has never been expressly conferred by any act of Congress." 14 Am. Jur. 52.

In absence of contract, statute, or recognized ground of equity, a court has no power to award an attorney's

fee as part of the costs of litigation. The statute (Rem. Rev. Stat., § 481) fixed the attorney fee which may be allowed to a successful litigant as costs in a civil action, like the case at bar, in the amount of ten dollars; therefore, no allowance in excess of that amount may be awarded to appellant.

The judgment is affirmed.

ROBINSON, C. J., BEALS, SIMPSON, and JEFFERS, JJ., concur.