[No. 6175-2-III.   Division Three.   January 3, 1985.]

FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF WALLA WALLA, *Appellant,* v. THE CITY OF WEST RICHLAND, *Respondent.*

*James K. Hayner* and *Minnick, Hayner & Zagelow, P.S.,* for appellant.

*Robert G. Swisher, City Attorney,* and *Gladstone & Swisher,* for respondent.

THOMPSON, J.—This appeal presents the issue of whether a security interest in a leasehold estate is sufficient "property ownership" to entitle the lienor to object to a local improvement district (LID) assessment. We hold it is not and affirm the trial court.

In 1978 and 1979, First Federal Savings and Loan Association (First Federal) loaned Desert View Mobile Home Park (Desert View) $450,000 to develop one–half of its mobile home park spaces. The funds were used to provide these spaces with water and sewer lines, sidewalks, curbs and streets. This left Desert View with 202 lots to be developed at a later time.

Desert View obtained an interest in the subject property by entering into a lease with the owner, State of Washington. Desert View mortgaged that leasehold interest to secure the loan from First Federal. Thereafter, Desert View

requested the City of West Richland to assist it by way of an LID assessment to improve the remaining undeveloped 202 spaces. On March 15, 1982, the City passed an ordinance providing that $730,000 would be spent to develop the remaining spaces, with the entire mobile home park being encompassed within the district. First Federal appeared and objected at the August 15, 1983 hearing to confirm the assessment roll. However, the assessment was subsequently confirmed by the City.

First Federal's appeal to superior court was dismissed in a summary judgment proceeding based on the court's determination that only "owners of the property" could appeal, and First Federal lacked standing since it held only a security interest in the leasehold. The court also refused to grant the City attorney fees.

First Federal contends that, as mortgagee, it has a legitimate property interest which needs to be protected.[1]

As First Federal's claim was dismissed in a summary judgment proceeding, we must determine whether there is a genuine issue as to any material fact and whether the moving party is entitled to judgment as a matter of law. *Dodd v. Gregory,* 34 Wn. App. 638, 663 P.2d 161 (1983). We, thus, turn to the question of whether the LID statutes require "appellants" to be affected "property owners", and whether First Federal is such a "property owner".

RCW 35.43 provides for the creation of LID's. A city may initiate an LID, but it is required to hold a hearing for "all persons who may desire to object" prior to implementing the LID. RCW 35.43.140. Pursuant to RCW 35.43.150, a city is instructed to notify by mail the "owners or reputed owners" of all property to be "specially benefited by the proposed improvement", as shown on the county assessor's rolls. Notice is also provided by publication. RCW 35.43-.140. A city may be divested of jurisdiction to proceed with an LID if a protest is filed within 30 days of passage of the

---

[1]First Federal also argues that portion of the leasehold covered by First Federal's mortgage will not be benefited by the LID. However, since the property in question is a unit, it cannot be subdivided per benefit. Furthermore, this issue is moot since First Federal lacks standing to appeal the assessment.

ordinance ordering the improvement. This protest must be signed by "the owners of the property" within the proposed LID subject to 60 percent or more of the total cost of improvement. RCW 35.43.180. Thus, although the statute makes no mention of restrictions on who may object at the hearing, only "owners" of the affected property can prevent a city from proceeding with the LID.

RCW 35.44 provides for the actual LID assessment roll. Following computation of assessments, an assessment roll is filed and a hearing is scheduled pursuant to RCW 35.44-.070. Notice of this hearing is given to "all persons who may desire to object . . ." RCW 35.44.080. The owners or reputed owners of the property are to be given notice by mail; in addition, the statute provides for notice by publication. RCW 35.44.090. A hearing may be had before a city's legislative body, or that body may designate a committee or officer to conduct such hearings. If this procedure is followed, then an appeal shall be provided for "any person protesting his or her assessment . . ." RCW 35.44.070. Once a city has confirmed an assessment roll, appeal may be had in superior court. RCW 35.44.200.

■ Although the provisions detailing the appeals process refer only to "appellant", RCW 35.44.250 does refer to appellant in the context of a property owner:

[T]he court shall correct, change, modify, or annul the assessment insofar as it affects the property of the appellant.

In reference to a similarly worded statute, RCW 56.20.080, it was held that

an appeal from the confirmation of an assessment roll . . . is designed to allow *property owners* within the district a speedy and adequate remedy for any decision of the sewer commission as to an assessment and to prevent such a person from harassing the commission with lengthy litigation.

(Italics ours.) *Peterson v. Cascade Sewer Dist.,* 20 Wn. App. 750, 752, 582 P.2d 895 (1978).

Since the purpose behind RCW 35.44 is similar, *i.e.,* "to assure speedy prosecution of the appeal and to prevent

harassment by lengthy litigation", *Patchell v. Puyallup,* 37 Wn. App. 434, 441, 682 P.2d 913 (1984), and provisions such as RCW 35.44.070 would otherwise provide unequal treatment of parties in the appeals process, it appears the Legislature intended to limit appeals to property owners. *See also Fisher Bros. Corp. v. Des Moines Sewer Dist.,* 97 Wn.2d 227, 643 P.2d 436 (1982). The Supreme Court, in a case interpreting an earlier version of the LID statutes, noted: "the right of appeal from the decision of the city council is given to objecting property owners . . ." *Goetter v. Colville,* 82 Wash. 305, 307, 144 P. 30 (1914), *overruled on other grounds in Fisher Bros. Corp. v. Des Moines Sewer Dist., supra* at 230; *accord, In re Local Imp. Sewer Dist. 1,* 84 Wash. 565, 147 P. 199 (1915).

Even so, First Federal contends it is a "property owner" and thus entitled to prosecute an appeal. "It has been long recognized that the descriptive term 'owner' is subject to different meanings in varying contexts and is not limited to a strict definition of fee ownership." *Shell Oil Co. v. City & Cy. of San Francisco,* 139 Cal. App. 3d 917, 919, 189 Cal. Rptr. 276, 277 (1983). The trial court, relying on *Committee of Protesting Citizens v. Val Vue Sewer Dist.,* 14 Wn. App. 838, 545 P.2d 42 (1976), dismissed First Federal's action. That case held that only vendees under a recorded real estate contract were "owners" entitled to protest the formation of an LID.

Few courts have addressed the question of whether lienors are "property owners" within the LID statutes. In *Gibler v. Mattoon,* 167 Ill. 18, 47 N.E. 319 (1897), it was held that a special assessment judgment is a judgment in rem against the property assessed; and, as such, persons who are not shown by the record to be the owners of that property have no standing to object. *Accord, Waukegan v. Drobnick,* 123 Ill. App. 2d 465, 259 N.E.2d 402 (1970). In *Middlesboro v. Evans,* 261 Ky. 303, 305, 87 S.W.2d 352, 353 (1935), that court held the term "property owner" as used in a Kentucky LID statute "means the holder of the legal title, as distinguished from mortgagees, and was not intended to include a mere lienholder." This was found to

be so because a mortgagee has a lien only to secure the payment of a debt, and the LID improvements enhanced the value of the property, which in turn increased the value of the lienholder's security. We find this reasoning particularly persuasive since Washington is a lien theory state, *Parks v. Yakima Vly. Prod. Credit Ass'n,* 194 Wash. 380, 386, 78 P.2d 162 (1938), and in light of similar language found in *Seattle v. Hill,* 14 Wash. 487, 489, 45 P. 17 (1896). We conclude a security interest in a leasehold estate does not make First Federal "owners of the property" so as to support its objection to the LID assessment.[2]

First Federal next argues the LID statutes are unconstitutional if a lienholder is not allowed to appeal an assessment. Washington's Constitution, article 7, section 9, provides: "[t]he legislature may vest the corporate authorities of cities, towns and villages with power to make local improvements by special assessment, or by special taxation of property benefited." Forerunners of the present LID statutes were viewed by Washington courts as actions in rem since the liens were "upon the real estate". *See Seattle v. Hill, supra; Carstens & Earles, Inc. v. Seattle,* 84 Wash. 88, 146 P. 381, *modified,* 88 Wash. 632, 153 P. 1080 (1915); *accord, Gibler v. Mattoon, supra; Waukegan v. Drobnick, supra.*

> "While it is true that an assessment is not strictly a tax, it is also true that it is levied by the sovereign power for the general public good. It is also true that a mortgagee is benefited to the extent that the land is improved, for to the extent that the land is improved to that extent is its value augmented. . . . Every one who acquires an interest in land takes it subject to the right of the sovereign to lay general taxes upon it and to impose upon it the burden of *paying the expense of public improvements which confer upon the land a special benefit.*"

*Seattle v. Hill, supra* at 488–89 (quoting B. Elliott, *Roads*

---

[2]The City has also raised estoppel and statute of limitations defenses to First Federal's claim; however, because of the disposition of this case, we find it unnecessary to address these issues.

*and Streets* 433 (1890)). Adhering to this rule, the *Carstens* court found the notice and enforcement procedures of the LID statutes of its day satisfied "all constitutional requirements of due process of law . . ." *Carstens & Earles, Inc. v. Seattle, supra* at 99. Although First Federal claims its due process rights have been violated because the LID assessment does not benefit the developed portion of the mobile home park, it has also stated that it "has a mortgage on all of the land included in the assessment for Local Improvement District 1982–1." The record contains other affidavits to support this statement. Thus, any improvement to that mobile home park, whether or not it benefits the developed spaces, will increase the value of First Federal's security interest. Accordingly, we hold, following the rationale set forth in *Middlesboro v. Evans, supra,* that LID improvements enhance the value of the property to protect the lienholder's security; thus, no due process violation has occurred as a consequence of First Federal's inability to prosecute an appeal from the assessment roll.

█ The City contends it is entitled to costs and attorney fees pursuant to RCW 35.44.220. RCW 35.44.220 provides in part:

> At the time of filing the notice of appeal with the clerk of the superior court, the appellant shall execute and file with him a sufficient bond in the penal sum of two hundred dollars . . . and, if unsuccessful, to pay all reasonable costs and expenses which the city or town incurs by reason of the appeal.

The rule remains that "unless there is a contract, statute or recognized ground of equity, attorney fees will not be awarded as a part of the costs of litigation . . ." *Haner v. Quincy Farm Chems., Inc.,* 97 Wn.2d 753, 757, 649 P.2d 828 (1982). The City points to the phrase "costs and expenses which the city or town incurs by reason of the appeal", to support its claim for attorney fees.

Ordinarily the terms "costs" and "expenses" as used in a statute are not understood to include attorney fees. At common law the right did not exist to recover attorney fees from one's opponent in litigation as a part of the

costs. Therefore, the allowance of attorney fees as part of the costs of an action is dependent upon statutory authority expressly conferring the power to allow them. *Wolf v. Mutual Benefit Health & Accident Ass'n,* 188 Kan. 694, 700, 366 P.2d 219, 224 (1961); *Tracy v. T & B Constr. Co.,* 85 S.D. 337, 182 N.W.2d 320, 322 (1970).

Although attorney fees in Washington are considered costs of litigation rather than penalties, *Detonics ".45" Assocs. v. Bank of Cal.,* 97 Wn.2d 351, 354, 644 P.2d 1170 (1982), the term "costs" in the absence of statute or agreement does not include counsel fees. *State ex rel. Macri v. Bremerton,* 8 Wn.2d 93, 102, 111 P.2d 612 (1941); *Fiorito v. Goerig,* 27 Wn.2d 615, 179 P.2d 316 (1947). Moreover, "[t]he term 'costs' may be considered as synonymous with the term 'expense.'" *State ex rel. Macri v. Bremerton, supra* at 102. We conclude that had the Legislature intended to allow an award for attorney fees, it would simply have inserted the words "attorney fees" in the statute. Not having done so, we deny the City's claim for such an award.

The judgment of the trial court is affirmed.

MUNSON, J., and HOPKINS, J. Pro Tem., concur.

After modification, further reconsideration denied February 26, 1985.